**In re Stanley A. MOUSSA, Debtor.**

**Bankruptcy No. 387–31820–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Sept. 29, 1988.

See also, Bkrtcy., 95 B.R. 449.

Louis R. Strubeck, Fulbright & Jaworski, Dallas, Tex., for Duke Salisbury, trustee.

J. Kent Newsom, Newsom, Terry & Newsom, Dallas, Tex., for Cummings & Pewitt, Inc.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON,
Bankruptcy Judge.

Came on for consideration Trustee's Objection to Secured Claims of Class 8 Creditors wherein the Trustee objected to the claim of Cummings and Pewitt Inc. for engineering services performed by the claimants benefitting real property of the Debtor. The Trustee alleges that the Mechanic's and Materialmen's lien claimed by Cummings and Pewitt Inc. is invalid and requests that the Court disallow the claim in all respects. After consideration of the briefs and pleadings filed by counsel and hearing oral arguments and a review of the applicable authorities, the Court finds the claim is allowed in the amount of the actual value of the improvements made to the Debtor's property.

This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (K).

## FINDINGS OF FACT

1. Stanley Moussa (Moussa or Debtor) and C.T. Beckham (Beckham) owned separately, two contiguous tracts of land totalling 65.024 acres, located in Wiley, Collin County, Texas. Beckham and Moussa wished to jointly develop the land as a mixed use development consisting of single family residences and commercial businesses. The project was originally referred to as "Crescent Cove Development."

2. Stanley Moussa's tract of property (Moussa Tract or Property) consists of 34.094 acres. The property is nonexempt.

3. On August 5, 1985, a corporate charter was issued by the Texas Secretary of State to Thirteen Seventy–Eight Development Corporation (1378). The incorporators and initial directors of 1378 were Moussa and Beckham.

4. The following officers of the corporation were elected: Bobby Moussa (Stanley Moussa's son)—President: Mark Moussa—Vice President; Baron Cook—Vice President; and Stanley Moussa—Secretary/Treasurer.

5. On August 14, 1985, 1378 issued 100,000 shares of stock to the following shareholders:

| | |
|---|---|
| Moussa Enterprises, Inc. | —50,000 shares |
| Arapaho East, Inc. | —25,000 shares |
| Baron Clark | —12,500 shares |
| Bobby Beilue | —12,500 shares |

6. On August 14, 1985, 1378 appointed Moussa Enterprises, Inc. as a co-manager to supervise and manage construction of improvements on the development property.

7. The duty of securing bids for engineering, surveying and land planning was delegated to Moussa Enterprises, Inc.; 1378 was to assist in the bid selection process.

8. Cummings and Pewitt Inc. (C & P), the claimant in the present case, is an engineering firm. Beckham and Moussa represented to C & P that they each intended to sell their respective contiguous tracts to 1378.

9. In connection with the representation made to C & P, Moussa executed a Warranty Deed and approved the form of a Promissory Note for $340,953.00, and delivered the same to J. Kent Newsome to hold in escrow pending the approval of a development loan from Cullen Frost Bank.

10. On August 27, 1985, 1378 entered into a written agreement with C & P for engineering services.

11. C & P was instructed by Moussa, Beckham and 1378 to develop the land as a single tract.

12. The following work was done with respect to the Moussa Tract: (a) the boundaries were located and staked; (b) the property was engineered and preliminarily platted consisting of grade elevations and topographical surveying, location and platting of single family lots, location and platting of streets, alley ways and utilities; (c) in accordance with the engineering plans offsite utilities were brought across the Moussa Tract to service the Beckham Tract; and (d) in accordance with the engineering plans, the grading of a road was begun across the tract, however, the road was never completed.

13. The parties agree that the presence of utilities on the Moussa Tract, substantially and materially improves the value of the Property.

14. C & P either performed or supervised the work performed on the Moussa Tract.

15. C & P performed services under the contract in a good and workmanlike manner. The final charge for it's services was $131,937.77.

16. All applications for plat approval and zoning changes were submitted to the City of Wylie, Texas by 1378 as the reputed owner of all the property included in the Crescent Cove Development.

17. 1378 made application for a development loan with Cullen Frost Bank which was approved conditioned upon Mickey Murry personally guaranteeing the performance of Murry Homes, Inc., pursuant

to a contract between Murry Homes, Inc., and 1378 executed on August 1, 1985.

18. Cullen Frost Bank delivered proposed loan documents including the Development Loan Agreement and Promissory Note. The documents were approved by the Board of Directors of 1378 at a special meeting on October 16, 1985.

19. The contract between Murry Homes, Inc., and 1378 was terminated by Murry Homes Inc., on November 25, 1985.

20. On April 15, 1986, at Moussa's request, Moussa and Beckham agreed to abandon the development project. The two men entered into an agreement terminating and rescinding the conveyances of both the Beckham and Moussa Tracts to 1378. The agreement authorized the attorney for 1378 to destroy the instruments of conveyance which he had been holding in escrow, and also provided, among other things, that Moussa would sell to 1378 the 50,000 shares of 1378 stock originally issued to Moussa Enterprises Incorporated.

21. As a result of the termination of the project, the instruments of conveyance held in escrow by 1378's attorney, were never executed, and therefore, the Moussa Tract was never conveyed to 1378.

22. Upon the abandonment of the project, C & P agreed with 1378, Moussa and Beckham to split responsibility for payment of the outstanding invoices for engineering services.

23. As a result of this agreement, C & P claims that the portion of the engineering fees for which Moussa is responsible is $45,523.57. C & P further claims that, pursuant to the written contract between 1378 and C & P, the unpaid claim bears interest at a rate of twelve percent (12%) per annum from February 1, 1986, which is $18.25 per diem.

24. On February 13, 1986, C & P executed an Affidavit claiming a Mechanic's and Materialmen's Lien against the Moussa Tract. The Affidavit was filed of record February 19, 1986, and now appears of record at Volume 2311, page 859 of the land records of Collin County, Texas.

25. The Debtor filed his Chapter 11 petition on April 3, 1987.

26. C & P timely filed their claim.

27. The Trustee filed his Objection to Secured Claims of Class 8 Creditors on March 15, 1988 which included an objection to the claim filed by C & P. C & P filed a timely Response to the Trustee's Objection and oral arguments were heard on the subject on August 9, 1988.

## DISCUSSION OF THE LAW

The Texas Property Code states that a person is eligible for a Mechanic's and Materialmen's lien (M & M lien), if he labors, specially fabricates material or furnishes labor or materials for the construction or repair of buildings or improvements and the person performs these services under or by virtue of a contract with the owner or the owner's agent, trustee, receiver, contractor or subcontractor. TEX.PROP. CODE ANN. § 53.021 (Vernon 1984). To perfect the lien, the lien claimant must file an affidavit with the clerk of the county where the property is located. The affidavit must list, among other things, the name of the owner or reputed owner and describe the property upon which the lien is claimed. *Id.* § 53.054. The lien claimant must then send two copies of the affidavit to the landowner. *Id.* § 53.055.

There are essentially three areas of dispute in this case. First, the Trustee argues that C & P did not perform the type of labor, with respect to the Moussa Tract, which would entitle it to a lien under the Property Code. Secondly, the Trustee claims that C & P does not have a valid lien because it did not contract for labor with the owner of the property on which the lien is claimed, nor did it contract with the owner's agent. Finally, the Trustee alleges that even if C & P is entitled to a lien, it failed to properly perfect the lien because it did not send copies of the lien affidavit to Moussa, the owner of the property on which the lien is claimed.

■ The first argument revolves around the fact the C & P, as engineers did not physically participate in the actual con-

struction of buildings or other improvements made on the Moussa Tract; it's duties primarily concerned platting and engineering the property in preparation for construction. This aspect of the case is further complicated by a total lack of case law concerning the type of engineering work which C & P performed, and the consequent availability of M & M liens. The parties agree, however, that existing case law concerning architects and M & M liens are analogous to the present situation, and should control. These cases clearly state that an architect who merely prepares plans and specifications is not a person entitled to a statutory M & M lien. *In re Boots Builders, Inc.*, 11 B.R. 635, 639 (Bankr.N.D.Tex.1981). It is only when an architect *supervises* the construction of buildings or other improvements that the lien becomes available to him. *Sanguinett and States v. Colorado Salt Co.*, 150 S.W. 490 (Tex.Civ.App.—Ft. Worth 1912, writ refused); *Lancaster v. McKenzie*, 439 S.W. 2d 728, 729 (Tex.Civ.App.—El Paso 1965, no writ).

C & P claims that it supervised both the grading of a road on the Moussa Tract and the installation of utilities across the Property for service to the Beckham Tract. The Trustee does not directly dispute this claim, he argues only that C & P did not supervise "the construction or improvement *of any structure*" on the Moussa Tract, (emphasis added). The Property Code expressly states that "the commencement of construction of improvements" constitutes the time of inception of an M & M lien, TEX.PROP.CODE ANN. § 53.124(a)(1) (Vernon 1984), and the grading of land has been found to constitute the "commencement" of the construction of an improvement giving rise to a lien. *Reliable Life Ins. Co.*, 607 S.W.2d at 629. The Property Code does not restrict the availability of M & M liens only to those who participate in the construction or improvement of "structures" as the Trustee seems to imply. The Court finds that, because C & P supervised the grading of the road on the Moussa Tract and the laying of utilities across the Property, C & P performed the type of services with respect to the Moussa

Tract which would entitle it to an M & M lien on the Property.

■ C & P presented several arguments against the Trustee's allegation that C & P does not have a valid lien because it did not enter into a written contract with the owner of the Property, however, the Court finds it necessary to address only the first of C & P's arguments. As stated in the Findings of Fact, the property in question was never conveyed to 1378, but remained at all times in the possession of Stanley Moussa. Furthermore, C & P admits that it entered into a written contract only with 1378, not Moussa. C & P submits that the fact that it did not have a written contract with Moussa, the actual owner of the property, is immaterial, because a written contract for construction is required only where the contractor seeks a lien on property claimed as a homestead. C & P claims it must merely show that Moussa knew of and consented to the work performed on his property. A review of the appropriate authorities supports C & P's position.

Section 53.124(a)(2) of the Property Code expressly allows oral contracts, while Section 53.059 of the Property Code, which applies to M & M liens on homesteads, requires written contracts. In addition, the courts have long agreed that, unless homesteads are involved, oral construction contracts may be secured by M & M liens. *Purdin v. Jenkins*, 337 S.W.2d 418, 421 (Tex.Civ.App.—Dallas 1960, no writ). It appears that "when the owner ... knows the work in the construction or improvement ... is being done and fails to object thereto, but acquiesces therein in a manner indicating a willingness on his part to have the work done, his consent to the work and promise to pay therefor will be implied." *Tenson v. Hagendorn*, 155 S.W. 690, 694 (Tex.Civ.App.—Dallas 1913, no writ).

It is undisputed that Moussa knew of and acquiesced in the work done on his property by C & P. The Stipulations of Fact state that Moussa instructed C & P to engineer his land. In addition, Moussa attended the meetings of both the City Council of Wylie, Texas and the Planning and Zoning Commission where the preliminary

plat of the Property, which C & P had prepared, was approved, and zoning changes for the Property were submitted and approved. The Court finds these actions sufficient to imply an oral contract for construction which may be secured by an M & M lien.

As for the Trustee's third argument, C & P admits that it did not send two copies of the lien affidavit to Moussa, but rather it sent the copies of the affidavit to 1378. The Trustee argues that this action on behalf of C & P is made more egregious because C & P must have suspected that 1378 did not own the land because it filed the lien affidavit listing both 1378 *and* Moussa as the owners or reputed owners of the land. The Trustee later states that C & P had a duty to check the Collin County, Texas Deed Records to discover who the owner of the land actually was. The Trustee misunderstands the purpose and intent of the M & M lien statutes.

In setting out the required contents of an M & M lien affidavit, Section 53.054(a)(2) of the Property Code states that the affidavit must contain "the name of the owner or reputed owner, *if known*," (emphasis added). Clearly the Property Code allows contractors to rely on the representations of ownership made to them by the parties with whom they deal; it *does not* require contractors to search legal records and acquire absolute certainty of ownership of the property on which they have labored and claim a lien. In addition, the Court believes that the Sections 53.055 and 53.054 of the Property Code, must be read in harmony. When Section 53.055 requires the lien claimant to send two copies of the lien affidavit to the "owner", surely it means that this notice of the lien filing must be sent to the "owner or reputed owner" of the property as set out in Section 53.054! TEX.PROP.CODE ANN. §§ 53.054(a)(2) and 53.055 (Vernon 1984). This interpretation of the M & M lien statutes is in keeping with the general rules that the M & M lien statutes are to be liberally construed to protect contractors, *Reliable Life Ins. Co., Inc. v. Brown & Root Inc.*, 607 S.W.2d 621, 627 (Tex.Civ.

App.—Waco 1980, writ ref. n.r.e.), and that only substantial compliance with the statutory requirements is necessary to obtain a valid lien. *Conn, Sherrod & Co., Inc., v. Tri–Electric Supply Co., Inc.*, 535 S.W.2d 31, 35 (Tex.Civ.App.—Tyler 1976, writ ref. n.r.e.).

It also appears that notice of a lien filing may be implied under certain circumstances. At least one court has held that the landowner has actual notice that a lien may encumber his property when he has knowledge of the work done on his property. *Inman v. Clark*, 485 S.W.2d 372 (Tex.Civ. App.—Houston [1st Dist.] 1972, no writ). The *Inman* court added that "[w]ithin the period of time allowed by the statutes for a mechanic's lien to be secured by filing, every person dealing with the property is charged with notice of the lien's existence." *Id.* at 374.

Because it is undisputed that Moussa was aware of the work done on his property by C & P, that Moussa represented to C & P that the Property would be conveyed to 1378, and that 1378 publicly claimed to be the owner of the Property, this Court finds that C & P substantially complied with the statutory requirements by sending notice of the filing of the M & M lien to 1378.

The Court, however, questions the amount of the lien claimed by C & P. The lien claimants base their $45,523.57 claim on the fact that Moussa, Beckham and 1378 agreed to split the total $131,937.77 bill for the engineering services provided by C & P for the entire development project. The parties agree that the majority of the services provided by C & P benefited only the Beckham Tract and were performed under the contract with 1378, for these reasons, the agreement to split the total cost of the engineering services is more in the nature of a guarantee of the corporate debt of 1378, which would be enforceable only upon a written contract. *Dunn v. Growers Seed Assn.*, 620 S.W.2d 233, 237 (Tex.Civ. App.—Amarillo 1981, no writ); TEX.BUS. & COM.CODE ANN. § 26.01(b)(2) (Vernon 1968). Rather this Court finds the lien should be allowed to the extent of the

actual value of the improvements made to the Moussa Tract. *Texas Bank & Trust Co. v. Campbell Bros. Inc.,* 569 S.W.2d 35, 42 (Tex.Civ.App.—Dallas 1978, writ dismissed). Because the evidence presented at the hearing on the Trustee's objection to C & P's claim failed to establish the actual value of the improvements made to the Moussa Tract, the Court orders that an additional hearing be held at which evidence on this subject is to be presented.

As for the claims for attorneys fees incurred by C & P in pursuit of the lien and for interest on the debt, the claims must be disallowed because, under Texas law, M & M liens do not include these items unless the contract specifically provides for them. *See generally Palomita, Inc. v. Medley,* 747 S.W.2d 575 (Tex.App.—Corpus Christi 1988, no writ); and *Davidson v. Clearman,* 380 S.W.2d 836 (Tex.Civ.App.—Ft. Worth 1964), *modified,* 391 S.W.2d 48 (Tex.1965). The Court is unwilling to stretch the implied contract between C & P and Moussa to such lengths.

### CONCLUSION

Based on the foregoing discussion, the Court finds that C & P has a valid lien on the Moussa Tract, the value of which will be determined at a hearing at which evidence will be presented concerning the actual value of the improvements made by C & P, or made under the supervision of C & P, to the Property. The further relief requested by C & P is denied in all respects.