Juan VALDEZ, d/b/a JV Construction Company, Petitioner,

v.

DIAMOND SHAMROCK REFINING AND MARKETING COMPANY and Diamond Shamrock Stations, Inc., Respondents.

No. D–2100.

Supreme Court of Texas.

Dec. 2, 1992.

**274**

Willis (Bill) E. Kuhn, II, Dallas, for petitioner.

Larry Bracken, Dabney D. Bassel, Fort Worth, for respondents.

## OPINION ON MOTION FOR REHEARING

MAUZY, Justice.

Petitioner's motion for rehearing is granted; respondents' motion for rehearing is overruled. The court's opinion and judgment of October 7, 1992, are withdrawn, and this is now the opinion of the court.

This case involves the interpretation of the Texas Property Code as it applies to mechanic's liens.[1] We hold that petitioner Valdez properly perfected his interest under the Code and is entitled to a lien on all of the property cited in his mechanic's lien affidavit.

The parties stipulated to the material facts as set forth in affidavits and filed documents. Opus I, Ltd. ("Opus"), a Texas limited partnership, purchased a 7.9–acre tract of undeveloped land in Lewisville, Texas in the fall of 1985. Opus obtained the services of Ambassador Development Corporation ("Ambassador") as general contractor to develop the land. Ambassador then subcontracted with Juan Valdez, d/b/a JV Construction Co. ("Valdez"), to pour and fabricate concrete. Valdez began work in February of 1986, finishing by August of 1986.

Valdez timely filed a mechanic's lien affidavit to perfect his lien on September 16, 1986.[2] During the course of Valdez's work, in June of 1986, Opus replatted the land into two separate tracts: a 7.1–acre tract—on which Valdez was working—and a still-undeveloped 0.8–acre tract. Opus then sold the 0.8–acre tract to Diamond Shamrock Refining and Marketing Company ("Diamond Shamrock") on July 31, 1986, and the deed was recorded in the clerk's office of Denton County on August 7, 1986.

Valdez sued Opus and Ambassador for payment, and obtained a judgment for $91,011.46 and a lien covering the entire 7.9 acres. Unable to recover the amount of the judgment, Valdez took steps to bring about a sheriff's sale for the entire lot. Diamond Shamrock objected, however, and obtained a temporary injunction blocking the sheriff's sale as to Diamond Shamrock's 0.8–acre portion.

At a trial without a jury, the trial court held that Valdez had not perfected its lien as to the 0.8–acre tract and permanently enjoined the sheriff's sale as to that portion of the property. The court of appeals affirmed, holding that Diamond Shamrock was a good-faith purchaser for value without actual or constructive notice of Valdez's right to assert a mechanic's lien, and therefore Valdez did not have a perfected lien as to the 0.8–acre tract. 820 S.W.2d 955. Valdez argues that he fully complied

---

**1.** This opinion refers to the Texas Property Code as it existed in 1985 and 1986, when the facts giving rise to this case occurred. Although most of the mechanic's lien provisions in the Property Code were amended in 1989, see 1989 Tex.Gen. Laws chs. 395, 1138, the provisions applicable to this case appear to be substantially unchanged.

**2.** Section 53.052 of the Property Code permits a subcontractor's lien affidavit to be filed within 90 days after "the indebtedness accrues." Tex. Prop.Code § 53.052(c) (1984) (amended 1989). The indebtedness "accrues on the 10th day of the month following the last month in which the labor was performed or the material furnished." Tex.Prop.Code § 53.053(d) (1984) (amended 1989). Having been properly filed, a mechanic's lien relates back to the earlier of: (1) the commencement of visible construction or delivery of materials, or (2) the recording of a written agreement or affidavit acknowledging that a contractor or subcontractor has been engaged. Tex.Prop.Code § 53.124(a)-(b) (1984) (amended 1989); see Part III, infra, of this opinion.

with the Property Code's requirements and that his lien was indeed properly perfected for the land that includes the 0.8–acre tract.

## I. *Scope of Mechanic's Lien*

As stated in Texas Property Code section 53.022(c), a mechanic's lien extends to the entire "lot" on which work is being performed. Although not defined in the statute, a "lot" usually refers to a parcel of land as marked on a plat or survey. *See* BLACK'S LAW DICTIONARY 946 (6th ed. 1990). Diamond Shamrock argues, however, that the term "lot" has a unique meaning in the context of a mechanic's lien. Diamond Shamrock asserts that the legislature did not envision that a city tract of the size here (7.9 acres) would come under the term "lot"; instead, a "lot" refers merely to the improvement and the land immediately surrounding the improvement. We disagree.

This court has long acknowledged that "the duty of courts [is] to construe a law as written ... and not look for extraneous reasons to be used as a basis for reading into a law an intention not expressed nor intended to be expressed therein." *See Government Personnel Mut. Life Ins. Co. v. Wear*, 251 S.W.2d 525, 529 (Tex.1952). Here, insofar as the legislature has not specified a maximum size for a city "lot," nor given any impermissible ratio for the size of an improvement to the size of the encumbered lot, we believe the plain language of the statute indicates that an entire undivided tract is a single lot.

Diamond Shamrock also argues that the 0.8–acre tract was a distinct "lot" as early as November 1985, when Opus entered into a loan agreement with Southwest Savings Association to help finance the construction project. In the agreement, the 0.8–acre tract was designated as a "release tract," meaning that the tract could be sold separately without any penalty under the agreement. Diamond Shamrock thus contends that Opus *intended* that the tract be separate, and indeed *treated* the 7.1-acre tract and 0.8–acre tract distinctly.

On the issue of intent, Diamond Shamrock's undisclosed intentions are irrelevant—what counts are public manifestations by which potential creditors will be put on notice. *See Popplewell v. City of Mission*, 342 S.W.2d 52, 56 (Tex.Civ.App.—San Antonio 1960, writ ref'd n.r.e.) (noting that all matters affecting land titles must be disclosed in public records). Moreover, even on the issue of how Opus actually treated the 0.8–acre tract, Diamond Shamrock's contention fails. The financing agreement, which evidently was not included in the deed records, does not serve the same legal purposes of a duly recorded replatting, as was actually done in June of 1986. Valdez had no reason to believe anything other than that Opus owned the 7.9-acre tract as an undivided lot.

The most reasonable and pragmatic interpretation of the term "lot," for purposes of section 53.022, is that it refers to a single tract of land as recorded in the county deed records. Accordingly, a properly perfected lien by Valdez would extend to the lot that existed when construction began[3]—the entire undivided 7.9 acres.

## II. *Perfection of Mechanic's Lien*

The requirements for perfecting a mechanic's lien are set forth in sections 53.051–.059 of the Texas Property Code. The step with which Diamond Shamrock has a complaint is whether Valdez properly complied with the notice provisions of section 53.056, which applies to a lien claimant who is not an original contractor. The section requires that the lien claimant give written notice of the unpaid balance *to the owner of the property* within a specified period of time. *See* Tex.Prop.Code § 53.056(b) (1984) (amended 1989). Diamond Shamrock claims that because it was the actual owner of the 0.8–acre tract at the time the mechanic's lien affidavit was filed, Diamond Shamrock was entitled to notice of the claim to its property; thus, not having timely received notice, Diamond Shamrock asserts that Valdez's mechanic's lien cannot reach the 0.8–acre tract.

---

**3.** See the discussion in Part III, *infra*, concerning the relation-back provision.

An investigation of the text of the Property Code reveals nothing that would require prospective holders of a mechanic's lien to search property records to determine certainty of ownership at *any* time. Rather, a contractor or subcontractor is entitled to rely on representations of ownership made by the parties with whom the contractor deals. We note that section 53.054 of the Property Code allows the name of the "owner *or reputed owner*" to be listed as part of the mechanic's lien affidavit. Tex.Prop.Code § 53.054(a)(2) (1984) (amended 1989) (emphasis added). This provision is necessarily implicated when interpreting other Property Code references that an "owner" be notified of an attempt to secure a mechanic's lien. *See generally In re Moussa,* 93 B.R. 96 (Bankr.N.D.Tex. 1988) (construing the rights of contractors who assert mechanic's liens under the Texas Property Code).

■ Thus, Valdez did all that was necessary to protect his rights. A realty purchaser is deemed to have constructive notice of a worker's right to assert a lien for a statutory period that may have commenced prior to purchase. *See Inman v. Clark,* 485 S.W.2d 372, 374 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); *Wood v. Barnes,* 420 S.W.2d 425, 428 (Tex.Civ. App.—Dallas 1967, writ ref'd n.r.e.). The record in this case shows that Diamond Shamrock's agent, Jerry Cumpton, visited the property on a regular basis from late 1985 until the July 1986 purchase of the 0.8–acre portion of the lot. For several months prior to purchase, a large construction project was underway on the 7.9–acre lot. Significantly, on the surface—as in the deed records—there was no physical separation of the 0.8–acre tract.

■ The trial court made a finding of fact that Valdez's work on the 7.1–acre tract could not provide constructive notice that a right to assert a lien on the 0.8–acre tract. However, we hold that as a matter of law, a purchaser's knowledge that improvements have been recently made on a single piece of property is sufficient to impose constructive notice of a worker's right to assert a mechanic's lien within the statutory period. *See Inman,* 485 S.W.2d at 374; *Wood,* 420 S.W.2d at 428. Diamond Shamrock cannot now claim that it had no indication that a lien might have been in force covering the entire 7.9 acres. We do not see the need to impose an additional burden on subcontractors to recheck deed records for a purchase that occurs after construction has started.

### III. *Relation–Back Provision*

■ Having determined that Valdez followed the proper steps in filing his lien, we now determine the effective date of such a lien. At the time that Valdez perfected his lien, section 53.124 of the Texas Property Code provided that a lien's inception date would be deemed as being the earlier of: (1) the commencement of visible construction or delivery of materials, or (2) the recording of a written agreement or affidavit acknowledging that a contractor or subcontractor has been engaged. Tex.Prop. Code § 53.124(a)-(b) (1984) (amended 1989).[4] This relation-back provision fixes the protections and obligations of the lien statutes in general as having arisen on the inception date, and taking priority over the subsequent transfer of interest. *See Diversified Mortgage Investors v. Lloyd Blaylock General Contractors, Inc.,* 576 S.W.2d 794, 804–06 (Tex.1978) (construing Tex.Rev. Civ.Stat.Ann. art. 5459 § 2 (Vernon 1971) (repealed 1984), which was the predecessor to Tex.Prop.Code § 53.124). Consequently, because Diamond Shamrock's deed was not filed until after the date visible construction began—whereby Valdez's lien took effect—Valdez has a superior claim to the property covered by his lien.

### IV. *Conclusion*

Valdez fully complied with the Texas Property Code's requirements for perfecting a mechanic's lien. Accordingly, Valdez's lien relates back, as a matter of law,

---

**4.** The 1989 amendment to this statute deleted subparagraph (a)(2), and fixes the inception date of a lien as the date when visible construc-tion or delivery of materials begins. *See* Tex. Prop.Code § 53.124 (1989).

to the lot comprised of Opus's entire 7.9 acres. Any other conclusion would contravene public policy, insofar as it might allow a property owner to sell off portions of a lot and thereby reduce a contractor's or subcontractor's lien rights with impunity. We therefore reverse the judgment of the court of appeals, order the trial court's injunction dissolved, and render judgment in favor of Valdez. Pursuant to section 53.156 of the Texas Property Code, this cause is remanded to the trial court for the sole purpose of determining the appropriate award of costs and attorney's fees to Valdez.