NO. 12-02-00083-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 

TEXAS WOOD MILL CABINETS, INC.

F/K/A WOODMARK CABINETS §
 APPEAL FROM THE 124TH

& DOORS, INC.,

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF



LEO BUTTER, AND WIFE,

HOLLY BUTTER,
§
 GREGG COUNTY, TEXAS

APPELLEES





OPINION


 Appellant Texas Wood Mill Cabinets, Inc. ("TWM") appeals a take-nothing judgment in a
suit to foreclose its mechanic's and materialman's lien against property owned by Appellees Leo and
Holly Butter ("Leo" and "Holly" or "the Butters"). In two issues, TWM challenges the trial court's
findings and conclusions regarding the Butters' constructive notice of its lien and the completion
date of the contract. The Butters, in one cross-issue, dispute the trial court's finding that TWM's lien
affidavit was timely filed. We reverse the judgment of the trial court and render judgment for TWM,
but deny TWM's request for attorney's fees.


Background


 In April of 1999, David Deutsch ("Deutsch"), a partner in D&D Construction ("D&D"),
asked Timothy Kelley ("Kelley"), as president of TWM (then known as WoodMark Cabinets &
Doors, Inc.), to design and bid on cabinets to be installed in a "spec home" that D&D was building
in Longview, Texas. The house was being constructed on property owned by D&D. On April 5,
Kelley went to the construction site to make the required measurements. D&D subsequently entered
into a contract with TWM ("the contract") to build and install the cabinets. (1) The initial installation
was performed in mid-May 1999 and additional work was performed on June 17 and July 5. TWM
billed D&D a total of $12,884.84 for the project. 

 On June 18, the Butters agreed to purchase the house from D&D and signed a "New Home
Contract (Incomplete Construction)." The transaction closed on July 6. D&D did not pay TWM,
and on October 11, 1999, TWM filed an "Original Contractor's Affidavit of Claim for Mechanic's
Lien" in the Official Public Records of Gregg County, Texas. On the same date, TWM sent a copy
of the affidavit to the Butters and to Deutsch by certified mail. On September 1, 2000, TWM sued
the Butters seeking foreclosure of its lien. The Butters filed a general denial and also alleged that
they were subsequent purchasers who had neither actual nor constructive notice of TWM's lien
against the property.

 After a nonjury trial, the trial court entered judgment in favor of the Butters and filed findings
of fact and conclusions of law. The trial court found and concluded, in pertinent part, that (1) the
debt of $12,884.84, which is a reasonable, customary and usual charge for the services performed
and material furnished for cabinet work under the contract in Gregg County, Texas, was due and
owing to TWM and had not been paid; (2) TWM timely filed its lien affidavit in accordance with
section 53.053(b) of the Texas Property Code; (2) (3) the lien was properly perfected and relates back
to TWM's commencement of work in April 1999; (4) the Butters, being bona fide purchasers for
value without actual or constructive knowledge of TWM's cabinet work, were not bound by the lien;
(5) though the Butters may have acquired the property subject to TWM's lien claim, TWM is not
entitled to foreclose the subject lien unless the Butters had either actual or constructive notice of
TWM's work or lien, and they had neither; (6) the Butters' personal knowledge that the subject
property was new residential construction and that improvements had been made on the property at
or shortly before they took possession on July 6, 1999 did not constitute constructive knowledge of
TWM's cabinet work, claim or debt; and (7) the Butters did not have actual or constructive
knowledge of TWM's constitutional lien at the time they purchased the property as bona fide
purchasers for value or of TWM's cabinet work, claim or debt. TWM filed a motion for new trial,

which was overruled by operation of law. This appeal followed.


Issues Presented


 In two issues, TWM contends that there is legally insufficient evidence to support the trial
court's findings that (1) the Butters did not have constructive notice of TWM's right to assert a lien
claim and that (2) TWM's contract with Deutsch was completed in June 1999. In one cross-issue,
the Butters challenge the trial court's conclusion that TWM's lien affidavit was timely filed.


Standard of Review


 Findings of fact have the same force and dignity as a jury verdict. Anderson v. City of Seven
Points, 806 S.W.2d 791, 794 (Tex. 1991). Findings of fact are not conclusive, however, when a
complete statement of facts appears in the record. Seelbach v. Clubb, 7 S.W.3d 749, 754 (Tex.
App.-Texarkana 1999, pet. denied). Where, as here, the appellate record contains a complete
reporter's record of the trial, we review a legal sufficiency challenge to the trial court's findings of
fact under the same standards for legal sufficiency as govern review of jury findings. Id. 

 An appellant attacking the legal sufficiency of the evidence to support an adverse finding on
an issue on which it did not have the burden of proof must demonstrate on appeal that no evidence
supports the adverse finding. See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In
reviewing a no-evidence issue, we consider only the evidence favoring the finding, disregarding all
direct and circumstantial evidence to the contrary. Lenz v. Lenz, 79 S.W.3d 10, 13 (Tex. 2002). 
Anything more than a scintilla of evidence is legally sufficient to support the finding. Continental
Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). More than a scintilla of evidence
exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds
about a vital fact's existence. Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002). A legal sufficiency challenge by an appellant who had the burden of proof on an issue will
be successful only upon a showing that the evidence conclusively establishes all vital facts in support
of the issue as a matter of law. Ritchey v. Crawford, 734 S.W.2d 85, 86 (Tex. App.-Houston [1st
Dist.] 1987, no writ).

 We review the trial court's conclusions of law de novo. Stolz v. Honeycutt, 42 S.W.3d 305,
310 (Tex. App.-Houston [14th Dist.] 2001, no pet.). Further, we follow a trial court's conclusion 
of law unless it is erroneous as a matter of law. Id.


Contract Completion Date


 In its second issue, TWM complains that the evidence is legally insufficient to support the
trial court's finding that the contract was completed in June 1999 and further contends that the
evidence presented at trial establishes as a matter of law that the contract was completed in July
1999. The Butters respond that the lien affidavit was not timely filed and therefore TWM's lien is
unenforceable. Specifically, the Butters challenge the trial court's conclusion that section 53.052(a)
determines the time within which TWM was required to file its lien affidavit and also dispute its
finding that the contract was completed in June 1999. Because the Butters complain of alleged error
in the trial court, we construe this response as a cross-issue. See Jackson v. Ewton, 411 S.W.2d 715,
715 (Tex. 1967) (reply points assist appellate court in finding answers to points of appellant and
show their invalidity; cross-points are means by which appellee complains of ruling or action of trial
court allegedly constituting error as to him); see also Atlantic-Richfield Oil & Gas Co. v. McGuffin,
773 S.W.2d 711, 715 (Tex. App.-Corpus Christi 1989, writ dism'd by agr.). We address TWM's
second issue and the Butters' cross-issue together.

Nature of the Project

 The Butters contend that the house they purchased was a "residential construction project." 
Therefore, they argue, subsection (b), and not subsection (a), of section 53.052 prescribes the time
within which TWM was required to file its lien affidavit. Subsection (b) provides that a person
claiming a lien arising from a residential construction project must file an affidavit with the county
clerk of the county in which the property is located not later than the fifteenth day of the third
calendar month after the day on which the indebtedness accrues. Tex. Prop. Code Ann. § 53.052(b)
(emphasis added). Subsection (a) allows an additional month for filing the affidavit. Tex. Prop.
Code Ann. § 53.052(a). If subsection (b) applies and the contract was completed in May as the
Butters assert or in June as the trial court found, TWM's lien affidavit was untimely.

 The term "residential construction project" means "a project for the construction or repair
of a new or existing residence, including improvements appurtenant to the residence, provided by
a residential construction contract." Tex. Prop. Code Ann. § 53.001(10) (Vernon Supp. 2003). The
record reflects that the house was constructed by D&D, the owner, as a "spec house" and not
pursuant to a residential construction contract. Therefore, the trial court correctly concluded that
section 53.052(a) applies and that TWM was required to file its lien no later than the fifteenth day
of the fourth calendar month after the day on which the contract is completed. See Tex. Prop. Code
Ann. § 53.052(a). Consequently, TWM's lien affidavit was untimely only in the event the contract
was completed in May 1999 as the Butters allege.

Contract Completion Date

 TWM argues that the evidence at trial establishes as a matter of law that the contract was
completed in July 1999. The Butters contend that the "evidence clearly established...that all 'work'
done after May 25, 1999 related to specific requests made by D&D to make adjustments on work
already billed for and abandoned by the Appellant." Therefore, contrary to the trial court's finding,
the Butters assert that the contract was completed in May 1999. We interpret the Butters' argument
as a challenge to the legal sufficiency of the evidence to support the trial court's finding. 

 When a term in a statute is not defined, we apply its ordinary meaning. See Tex. Gov't
Code Ann. § 312.002(a) (Vernon 1998). We interpret the term "completed," as it relates to the
contract before us, to mean "ended" or "concluded." (3) American Heritage Dictionary 181 (4th
ed. 2001). The objective of the contract between D&D and TWM was the construction and
installation of the cabinets for the house the Butters purchased from D&D. It therefore follows that
the contract could not be "completed," as we have defined the term, until the cabinets were
constructed, installed, and functional.

 Kelley testified that TWM performed the initial installation around the middle of May. At
that point, the cabinets were in the house, and the trim carpenters could start "trimming up to them." 
Kelley also testified about other work that is necessary after an initial installation. He stated that the
cabinet doors may not be hung during the initial installation. Also, the doors may need adjustments
after the cabinets are painted, and the customer may want changes after the job is installed. Other
factors, such as the installation of appliances, countertops, and flooring affect the nature of any
additional work required. Thus, the initial installation is not a completed installation.

 On June 17, TWM workers returned to the property at Deutsch's request because "one of the
pullouts in the master bath was dragging on the floor." TWM determined that the tile was thicker
than they had assumed it would be and modified the pullout to accommodate the increased thickness. 
On July 6, TWM workers again returned to the property because "there were a couple of drawers that
were hitting on the range." Holly testified that she learned this problem occurred because the
cooktop went in last and should have gone in first. To correct the problem, TWM modified the
drawers. Nothing in the record indicates that the work done in June and July was required because
of any fault of TWM. According to Kelley, the contract was complete once the work on the kitchen
drawers was performed. The Butters do not dispute that work was done on June 17 and July 6, but
contend it was "'punch list' work, defined by the Appellant at trial as alterations or adjustments to
previously performed work." Furthermore, the Butters also point out that "all 'work' done after May
25, 1999 related to specific requests made by D&D to make adjustments on work already billed for
and abandoned by the Appellant." However, Kelley testified that items on their punch list are work
that "needs to be done to a house in order to finish it up...." 

 As previously stated, the word "completed" means "ended" or "concluded. The contract
before us cannot be considered "completed" until the cabinets were constructed, installed, and
functional. As of May 25, 1999, TWM had completed the initial installation and furnished some
additional trim. The final adjustments to the work previously done, which Kelley testified were part
of the contract requirements and part of the usual procedure in cabinet installations, had not been
performed. Therefore, we conclude that the contract was not completed on May 25, 1999 as the
Butters assert. 

 For TWM to prevail on its legal sufficiency challenge, it must show that the evidence
conclusively establishes the vital facts in support of the issue. Based upon our review of the record,
we conclude that the uncontroverted evidence shows (1) that in July 1999, TWM modified the
kitchen cabinets to accommodate the cooktop, which was installed after the initial installation of the
cabinets, (2) that the work performed in July was required by the contract, and (3) that, after the
performance of the work in July, no further work was required to complete the contract. Therefore,
we hold that the evidence establishes, as a matter of law, that the contract was completed in July
1999. Consequently, we also hold that the evidence is legally insufficient to support the trial court's
finding that the contract was completed in June 1999. Accordingly, we sustain TWM's second issue
and overrule the Butters' cross-issue.


 Constructive Notice


Applicable Law

 The Texas Constitution grants to mechanics, artisans, and materialmen of every class a lien
on the buildings and articles made or repaired by them for the value of their labor done thereon, or
material furnished therefor, and requires that the Legislature provide by law for the speedy and
efficient enforcement of such liens. Tex. Const. art. XVI, § 37. Constitutional mechanic's liens
are self-executing as between the original contractor and the owner. First Nat'l Bank in Dallas v.
Whirlpool Corp., 517 S.W.2d 262, 267 (Tex. 1974). However, constitutional liens will not be
enforced against a subsequent purchaser who has neither actual nor constructive notice of the lien. 
Apex Financial Corp. v. Brown, 7 S.W.3d 820, 830 (Tex. App.- Texarkana 1999, no pet.); Irving
Lumber Co. v. Alltex Mortgage Co., 446 S.W.2d 64, 72 (Tex. Civ. App.- Dallas 1969), aff'd, 468
S.W.2d 341 (Tex. 1971). 

 For a contractor who has a constitutional lien to be protected against the rights of third
parties, he must either comply with the statutes relating to affidavits for fixing mechanic's and
materialmen's liens, thus giving constructive notice to third parties, or he must give actual notice to
third parties within the time prescribed by statute. Wood v. Barnes, 420 S.W.2d 425, 429 (Tex. Civ.
App.- Dallas 1967, writ ref'd n.r.e.) (citations omitted). Once the lien affidavit has been properly
filed, the lien relates back to the inception of the contract. Valdez v. Diamond Shamrock Ref. and
Mktg. Co., 842 S.W.2d 273, 276 (Tex. 1992). When a lien affidavit is filed after the property is sold
by the owner who contracted for the improvements, the purchaser is deemed to have constructive
notice of a contractor's right to assert a lien for the statutory period, even where the filing period
commenced prior to the purchase. Id.; Inman v. Clark, 485 S.W.2d 372, 374 (Tex. Civ. App.-
Houston [1st Dist.] 1972, no writ); Wood, 420 S.W.2d at 428. Additionally, personal knowledge
of improvements being made on the property at or shortly before the time the subsequent purchaser
took possession of the property provides sufficient notice of a contractor's right to assert a lien claim. 
See Contract Sales Co. v. Skaggs, 612 S.W.2d 652, 653 (Tex. Civ. App.- Dallas 1981, no writ);
Inman, 485 S.W.2d at 374. 

Analysis

 Bona fide purchaser status in the context of a constitutional mechanic's lien is an affirmative
defense that must be supported by pleadings and evidence. Skaggs, 612 S.W.2d at 653; Valley
Ready-Mix Concrete Co. v. Valley State Bank, 227 S.W.2d 231, 234 (Tex. Civ. App.- San Antonio
1950, no writ). In the case at hand, the Butters alleged they were subsequent purchasers who had
neither actual nor constructive notice of TWM's lien against their property. Consequently, they had
the burden of proof on the issue. See Skaggs, 612 S.W.2d at 653; Valley Ready-Mix, 227 S.W.2d
at 234. Actual notice rests on personal information or knowledge. Madison v. Gordon, 39 S.W.3d
604, 605 (Tex. 2001). Constructive notice is imputed in law to a person not having personal
information or knowledge. Id.

 At trial, Leo testified that he was not a party to Deutsch's contract with TWM and that he
purchased the property after TWM had completed its work. He also stated that prior to closing, he
requested a title search on the property, which revealed no liens or clouds on the title to the property. 
Leo also testified that he checked with D&D to determine whether they "owed anyone any money"
and was told that "all the bills were paid in full." At closing, D&D provided him with an affidavit
stating that "there are now no unpaid labor or material claims against the improvements or repairs,
if any, or the property upon which same are situated...." Consequently, it was his understanding that
on July 6, the property was free and clear from any liens and clouds on the title. He was not aware
that anyone had a right to file a lien against the property until he received notice that TWM had filed
its lien affidavit. Although Holly did not testify at trial, Leo testified that, to his knowledge, Holly
did not know about the lien until they received the certified letter from TWM. However, this
evidence relates to the Butters' contention, and the trial court's finding, that they were without actual
notice of TWM's right to file a lien and does not relate to whether the Butters had constructive
notice.

 Based upon our examination of the record, we find no evidence supporting the trial court's
finding that the Butters did not have constructive notice of TWM's right to assert a lien claim. To
the contrary, the uncontroverted evidence shows that the Butters first saw the house in June 1999,
while it was still under construction. When they first saw the house, it had a concrete slab, but no
flooring. The bricking may have been in progress, and the interior painting had begun. The cabinets
were installed, but the "granite [countertops] had not been laid." Some of the plumbing fixtures
were in, but the mirrors and "things of that nature" were not. Between June 18, the date of the
contract, and the closing on July 6, there was more work to be done to complete the structure. 
Neither knew how long it took to build the house, but Leo agreed that a house of its size would
probably take more than two months to build. 

 This evidence establishes that, in June 1999, the Butters had personal knowledge that
improvements were being constructed on the property. In turn, this knowledge is sufficient to charge
the Butters with constructive notice of TWM's right to assert a lien claim during the statutory period. 
See Valdez, 842 S.W.2d at 276; Inman, 485 S.W.2d at 374; Wood, 420 S.W.2d at 428. The Butters
contend that the cases cited by Appellant, such as Valdez and Inman, hold that constructive notice
is imputed to a subsequent purchaser only where work is performed by the lien claimant at or after
the date the purchaser takes possession of the property or where the purchaser knows the identity of
the specific entity performing the work for which the lien is claimed. However, we do not read those
cases so narrowly. Furthermore, it is a rule of long standing that the Texas mechanic's and
materialmen's lien statutes will be liberally construed for the purpose of protecting laborers and
materialmen. Hayek v. Western Steel Co., 478 S.W.2d 786, 795 (Tex. 1972). The interpretation
urged by the Butters is contrary to this rule. 

 Moreover, TWM's lien affidavit was in compliance with the statutory requirements and was
timely filed on October 11. Consequently, even if the Butters had no personal knowledge of the
improvements, they were charged with constructive notice of TWM's right to assert a lien for the
statutory period. See Valdez, 842 S.W.2d at 276; Inman, 485 S.W.2d at 374; Wood, 420 S.W.2d
at 428. Therefore, we sustain TWM's first issue.



 Attorney's Fees


 In its prayer for relief, TWM requests that we render judgment for its reasonable attorney's
fees incurred at trial and for the appeal. Section 53.156 of the Texas Property Code provides that
"[i]n any proceeding to foreclose a lien. . . the court may award costs and reasonable attorney's fees
as are equitable and just." Tex. Prop. Code Ann. § 53.156 (Vernon 1995). The language of section
53.156 indicates that a trial court's award of attorney's fees is discretionary, not mandatory. World
Help v. Leisure Lifestyles, Inc., 977 S.W.2d 662, 685 (Tex. App.- Fort Worth 1998, pet. denied)
(citing Texas Constr. Assocs. v. Balli, 558 S.W.2d 513, 522 (Tex. Civ. App.- Corpus Christi 1977,
no writ) (holding that trial court's award of attorney's fees under predecessor statute was
discretionary, not mandatory). Thus, an award of attorney's fees is not automatic, even to the
prevailing party. Id. Consequently, to be entitled to a rendition of judgment on this issue, TWM
must show that the trial court abused its discretion by failing to award attorney's fees at trial. See
TDIndustries, Inc. v. NCNB Texas Nat'l Bank, 837 S.W.2d 270, 273 (Tex. App.- Eastland 1992,
no writ).

 In the instant case, both TWM and the Butters requested attorney's fees, but the Butters
introduced no evidence on the issue. Thus, the trial court did not award fees to either. However,
TWM does not assign error to the trial court's denial of attorney's fees or argue that the denial is
error. Requesting attorney's fees in the prayer for relief is insufficient to raise the issue on appeal. 
See Mullinax, Wells, Baab and Cloutman, P.C. v. Sage, 692 S.W.2d 533, 536 (Tex. App.- Dallas
1985, writ ref'd n.r.e.). All assignments of error not brought forward as issues in an appellant's brief
are waived. See Jacobs v. Satterwhite, 65 S.W.3d 653, 655-56 (Tex. 2000) (applying "'well-established'" rule that grounds not asserted as error and supported by argument are waived); see also
Tex. R. App. P. 38.1(e), (h). Even absent waiver, however, we cannot say, after reviewing the record,
that the trial court abused its discretion in failing to award attorney's fees to either party. 
Accordingly, we deny TWM's request for attorney's fees.


Conclusion


 The trial court concluded that TWM has a valid lien against the property owned by the
Butters to secure a debt of $12,884.84. Having determined that the Butters had constructive notice
of Appellant's constitutional lien, we hold that TWM is entitled to a judgment for foreclosure of its
lien. We therefore reverse the judgment of the trial court and render a judgment of foreclosure for
TWM, but deny TWM's request for attorney's fees.



 SAM GRIFFITH 

 Justice



Opinion delivered April 23, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.






















(PUBLISH)











1. It is unclear whether the contract was written or oral.
2. Section 53.053(b)(2) provides that indebtedness to an original contractor accrues on the last day of the month
in which the original contract has been completed, finally settled, or abandoned. Tex. Prop. Code Ann. § 53.053(b)(2)
(Vernon Supp. 2003). An original contractor is a person who contracts with an owner either directly or through the
owner's agent. Tex. Prop. Code Ann. § 53.001(7) (Vernon Supp. 2003). A person claiming a lien must file an affidavit
with the county clerk in the county in which the property is located not later than the fifteenth day of the fourth calendar
month after the day on which the indebtedness accrues. Tex. Prop. Code Ann. § 53.052(a) (Vernon Supp. 2003).
3. TWM points out that "completion" is defined in Property Code section 53.001(15). However, that provision
does not apply to matters relating to or claims arising from an original contract entered into before September 1, 1999. 
Act of June 18, 1999, 76th Leg., R.S., ch. 889, §§ 1, 13(b), 1999 Tex. Gen. Laws 3586, 3591.