Affirmed and Memorandum Opinion filed June 16, 2009








Affirmed and Memorandum Opinion filed June 16, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00602-CV

____________

 

TEXOMA ADVERTISING CO., L.P., Appellant

 

V.

 

THE SIBLINGS, L.L.C., Appellee

 



 

On Appeal from the 354th
District Court

Rains County, Texas

Trial Court Cause No. 8294

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from a take-nothing judgment following a
bench trial.  Appellant Texoma Advertising Co., L.P. (ATexoma@) brought suit
against appellee The Siblings, L.L.C. (AThe Siblings@) for breach of a
lease agreement and conversion as a result of the removal of a billboard.  The
trial court found that Texoma was not entitled to recover from The Siblings
because there was no binding lease agreement.  Texoma challenges the legal
sufficiency of the evidence supporting the trial court=s conclusion and
also argues that the statute of frauds does not apply to bar its claims. 
Because there is legally sufficient evidence to support the trial court=s conclusions, we
affirm.








BACKGROUND

In 1996, Alec Outdoor Advertising and Fay Spencer entered
into a lease agreement with regard to land owned by Fay in Emory, Texas.  The
lease agreement allowed the tenant, Alec Outdoor, to maintain a bulletin
advertising sign (billboard) that existed on the land.  The billboard in
question, which was built in 1971, was located on the southbound side of
Highway 69 and could easily be seen from the road.  

In 1998, Alec Outdoor and Fay executed another lease
agreement, providing for a term that would end in April 2003.  After that term
ended, the parties could renew the lease on like terms from year to year.  The
rent for each year had to be paid in advance.  After executing the second
lease, Alec Outdoor sold its billboards, including the one on Fay=s property, to
Paris Outdoor Media, L.P.  Paris Outdoor Media, L.P. merged with Texoma, and
Texoma remained as the surviving entity.  Texoma states that it succeeded to
the rights of Alec Outdoor on the subject lease.  Neither the 1996 lease
nor the 1998 lease were recorded in the real property records.

In February 2005, Don Spencer, who had inherited the land
from his mother Fay, sold the real property on which the billboard was located
to The Siblings.  Don testified that, around the time of the sale, he told
Roger Hooten (the manager of The Siblings) that the billboard was on the
property and that the rent Don received covered maintenance on the lot and a
small portion of the taxes.  Roger denied any knowledge of such a conversation
and any knowledge of the lease agreement.  The billboard in question did not
identify Texoma, or any other company, as the owner, but did contain an
advertisement for Murrey Motors, a local car dealership.  Texoma=s representative
testified that a phone call to Murrey Motors would have revealed Texoma as the
owner of the billboard.  








Although The Siblings owned the property by April 2005 when
the next rent check was due, Texoma paid the 2005B2006 rental check
to Don Spencer, because Texoma was not yet aware of the sale.  The rent check
was not forwarded to The Siblings, and The Siblings was not aware that any rent
had been paid.  From February 2005 until April 2006, neither Roger Hooten nor
his son Nathaniel (a member of The Siblings) saw anyone perform maintenance on
the billboard.[1] 
Roger observed that the pole was rotting, and the advertising on the billboards
had not been changed since The Siblings had owned the property.  Sometime in April
2006, Roger, having concluded that the billboard was abandoned, had it
removed.  

In early April 2006, now aware of the sale of the real
property, Texoma sent the annual rent check to The Siblings.  Texoma did not
include a cover letter with, nor other explanation on, the check.  The check
was sent to a post office box used by Hooten Financial Bookkeeping Services and
Jackson Hewitt Tax Service, an accounting franchise owned by the Hootens. 
Nathaniel Hooten testified that he received the check during tax season,
thought it was for the payment of tax preparation services, and promptly
deposited the check into a bank account owned by Big 5 Investments, LLC, the
company that owned the Jackson Hewitt tax franchise.[2] 
Nathaniel explained that, at the time he deposited the check, he was not aware
the check was made out to The Siblings.[3] 
The Siblings did not usually receive checks.  The check was not endorsed by The
Siblings and was not deposited to The Siblings= account.








Also during April 2006, Scott Walderzak, a Texoma employee,
went to put a new advertisement on the billboard and discovered that it had
been removed.  Walderzak then went to the Hooten=s tax office,
which was located near the billboard.  The evidence is disputed with regard to
the information given to Walderzak and Texoma about the removal of the
billboard.  Walderzak testified that he spoke with Nathaniel, and Nathaniel 
initially told him that the City had the billboard removed.  Walderzak then
spoke with Roger Hooten, who allegedly told Walderzak that he had the billboard
removed so that a driveway could be built.  Nathaniel and Roger both denied
telling Walderzak that the City had the billboard removed.  Clark Cummins, one
of the owners of Texoma, testified that when he learned of the billboard=s removal, he
called Roger Hooten.  Roger told Cummins that the billboard had not been paid
for and thus did not have a right to be there.  Roger did not recall speaking
to Clark Cummins.  Roger and Nathaniel both denied having any actual knowledge
of the lease agreement or its terms prior to the underlying lawsuit being
filed.

On April 30, 2006, Jackson Hewitt Tax Service issued a
check to Texoma as a refund of the check previously deposited by Nathaniel into
the account of Big 5 Investments.  Texoma refused the refund of the check. 
Texoma then filed this lawsuit, seeking damages for breach of the lease
agreement and for conversion.

After a non-jury trial, the trial court issued a
take-nothing judgment in favor of The Siblings.  The trial court found that The
Siblings was only liable for the return of the rent check that had been
deposited into the Big 5 Investments account.  The trial court issued findings
of fact and conclusions of law, wherein it found, among other things, that A[t]he written
instrument of 1998 does not constitute a binding lease agreement between
Plaintiff and Defendant for use of [the] billboard.@  Texoma timely
filed this appeal.

ANALYSIS








Texoma challenges the trial court=s judgment in
three issues.  In its first issue, Texoma argues the evidence is legally
insufficient to support the trial court=s conclusion that
no binding lease agreement existed between Texoma and The Siblings and that The
Siblings is not liable to Texoma (except for the refund of the April 2006 rent
check), and that the trial court=s legal
conclusions are incorrect.  In its second issue, Texoma argues that the trial
court=s finding of fact
that the rent check for the 2005B2006 term was paid
to Don Spencer at a time when The Siblings owned the property does not support
the trial court=s legal conclusion that the lease was not binding
on The Siblings.  In its third issue, Texoma argues that its claims are not
barred by the statute of frauds.  We find there is legally sufficient evidence
to support the trial court=s legal conclusions and that the trial
court made the correct legal conclusions from the disputed facts.  Because of
our disposition of Texoma=s first issue, we need not address its
second and third issues.[4]

A.      Standards
of review.

When a trial court issues findings of fact and conclusions
of law following a bench trial, we review the findings and conclusions under
the same standards that we apply in reviewing jury findings.  Anderson v.
City of SevenPoints, 806 S.W.2d 791, 794 (Tex. 1991); Ahmed v. Ahmed,
261 S.W.3d 190, 193B94 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  In a legal sufficiency review, we determine whether the
evidence would enable reasonable and fair-minded people to reach the finding
under review.  See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005).  In conducting this review, we credit favorable evidence if reasonable
factfinders could and disregard contrary evidence unless reasonable factfinders
could not.  See id.; Ahmed, 261 S.W.3d at 194.  A legal
sufficiency, or no evidence, challenge may only be sustained when either the
record reveals a complete absence of evidence of a vital fact, the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, the evidence offered to prove a vital fact is no
more than a mere scintilla, or the evidence establishes conclusively the
opposite of the vital fact.  Ahmed, 261 S.W.3d at 194.








We consider the evidence in the light most favorable to the
finding under review and indulge every reasonable inference in support of the
judgment.  City of Keller, 168 S.W.3d at 822; Vickery v. Comm=n for Lawyer
Discipline, 5 S.W.3d 241, 252 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  Unchallenged findings of fact are binding on an
appellate court unless the contrary is established as a matter of law.  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986).  Where the trial court makes
findings of fact but inadvertently omits an essential element of a ground of
recovery or defense, the court will imply findings in support of the judgment. 
See Tex. R. Civ. P. 299; Vickery,
5 S.W.3d at 252.

We review the trial court=s conclusions of
law de novo.  BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794
(Tex. 2002).  We will uphold conclusions of law on appeal if the
judgment can be sustained on any legal theory the evidence supports.  2616
S. Loop L.L.C. v. Health Source Home Care, Inc., 201 S.W.3d 349, 355 (Tex.
App.CHouston [14th
Dist.] 2006, no pet.).  Incorrect conclusions of law do not require reversal if
the controlling findings of fact support the judgment under a correct legal
theory.  Id.  Moreover, in a bench trial, the trial court is the sole
determiner of the credibility of the witnesses and the weight to be given their
testimony.  See Cohn v. Comm=n for Lawyer
Discipline, 979 S.W.2d 694, 696B97 (Tex. App.CHouston [14th
Dist.] 1998, no pet.); Nordstrom v. Nordstom, 965 S.W.2d 575, 580B81 (Tex. App.CHouston [1st
Dist.] 1997, pet. denied).  The trial court, as the finder of fact, may
consider all of the evidence and circumstances and can reject or accept all or
part of a witness=s testimony.  Nordstrom, 965 S.W.2d
at 580-81.

B.      Was
there a binding lease agreement?








In its first issue, Texoma argues the trial court erred in
finding there was no binding lease agreement between Texoma and The Siblings
because, at a minimum, The Siblings had constructive notice of the terms of the
lease.  According to Texoma, The Siblings= alleged
acceptance of the April 2006 rent check by depositing it into Big 5 Investments= bank account,
ratified the lease and thereby created a binding contract between the parties.           1.       Actual
or constructive notice of the lease

The trial court did not make an express finding of fact
with regard to The Siblings= actual or constructive notice of the
lease.  It did, however, make findings of fact that: (1) the lease was never
recorded in the real property records; and (2) Texoma had no contact with The
Siblings prior to the mailing of the April 2006 rent check.  The Siblings
maintains that it had no actual knowledge of the 1998 lease agreement at the
time it purchased the real property on which the billboard sits.  Texoma argues
that Don Spencer told Roger Hooten about the revenue from the sign at the time
of the sale to The Siblings.  However, Roger Hooten disputed that testimony and
denied any knowledge of such a conversation.  Because there was disputed
evidence with regard to actual knowledge, the evidence is legally sufficient to
support an implied finding of fact that The Siblings did not have actual
knowledge of the lease.  See City of Keller, 168 S.W.3d at 827; see
also Vickery, 5 S.W.3d at 258 (where trial court makes findings of fact but
fails to include an element of a claim or defense, implied findings will be
made in support of the judgment where the omission was not pointed out to the
trial court). 

Texoma maintains on appeal that the more important issue is
whether The Siblings had constructive notice of the lease.  Texoma bases its
constructive notice argument on the fact that the billboard was located on the
property, for all to see, and that a simple phone call by The Siblings could
have ascertained the existence of the lease.  This evidence, according to
Texoma, satisfies the requirement that an occupant=s possession be
visible, open, exclusive, and unequivocal.  We disagree.








Under Section 13.001 of the Texas Property Code, an
unrecorded conveyance of an interest in real property is void as to a
subsequent purchaser who purchases the property for valuable consideration and
without notice.  See Tex. Prop.
Code Ann. ' 13.001(a) (Vernon 2003).  The unrecorded
instrument is binding, however, on a subsequent purchaser who does not pay a
valuable consideration or who has notice of the instrument.  See id.
' 13.001(b).  To
receive the bona fide purchaser protection, a party must acquire the property
in good faith, for value, and without notice of any third-party claim or
interest.  Madison v. Gordon, 39 S.W.3d 604, 606 (Tex. 2001) (per
curiam).  Notice of a third-party=s claim or
interest can be either actual or constructive.  Id.; Flack v. First
Nat=l Bank, 226 S.W.2d 628, 631 (Tex. 1950). 
Actual knowledge is found based on personal information or knowledge.  Madison,
39 S.W.3d at 606.  AConstructive notice is notice the law
imputes to a person not having personal information or knowledge.@  Id.  

The law will impute constructive knowledge where a
subsequent purchaser has a duty to ascertain the rights of a party in
possession.  Id.  The duty to ascertain arises only if the possession is
visible, open, exclusive, and unequivocal.  Id.  APossession that
meets these requirementsCvisible, open, exclusive, and unequivocal
possessionCaffords notice of title equivalent to the constructive
notice deed registration affords.@  Id.
(citing Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 348 (1936)). 
However, possession that is ambiguous or equivocal, which may appear
subservient or attributable to the possession of the holder of the legal title,
is not sufficiently indicative of ownership to impute constructive notice.  Id. 
If the duty to ascertain arises, then the subsequent purchaser is charged with
notice of all the occupant=s claims that the purchaser might have
reasonably discovered on proper inquiry.  Id.








Although the billboard was visible, open, and appeared
exclusive, the evidence raised a fact issue with regard to whether Texoma=s possession was
unequivocal.  When an occupant=s possession is consistent or compatible
with another=s ownership assertion, the occupant=s possession
cannot be said to be unequivocal.  Madison, 39 S.W.3d at 607; Strong,
98 S.W.2d at 350.  Roger Hooten testified that the billboard was in poor
condition and appeared to be abandoned.  The billboard was built in 1971 and
was concededly an older sign.  From February 2005 until April 2006, neither
Roger nor Nathaniel saw anyone perform maintenance on the sign, although Texoma
presented evidence that the lawn was cut at least once.  Roger observed that
the pole was rotting and that the advertising on the billboard had not been
changed since The Siblings had owned the property.  The trial court, as the
fact finder, was the sole arbiter of the credibility of, and weight to be
given, the witnesses= testimony.  See Nordstrom, 965
S.W.2d at 580B81.  Given the evidence, reasonable and fair-minded
people might disagree as to whether the pole appeared abandoned and subservient
to Spencer=s ownership of the property at the time of the sale. 
But that was a question for the trial court to resolve acting as the fact
finder.  The evidence supports an implied finding of fact that The Siblings did
not have constructive knowledge of the lease.  As a result, legally sufficient
evidence exists to support the trial court=s legal conclusion
that there was no binding lease agreement between Texoma and The Siblings.  See
City of Keller, 168 S.W.3d at 827.  

Texoma relies on Melvin R. Storm Family Partners, L.P.
v. Northcutt, No. 11-05-00402-CV, 2007 WL 2204170 (Tex. App.CEastland Aug. 2,
2007, no pet.) (mem. op.), to support its constructive notice argument.  We
find Melvin R. Storm distinguishable.  In Melvin R. Storm, an oil
and gas operator had a lease for conducting oil and gas operations on a portion
of land purchased by the defendant.  Id. at *3.  The purchaser argued
that it could not be bound by the lease because it could not be charged with
constructive knowledge.  Id.  In finding that legally and factually
sufficient evidence existed to support a finding that the oil and gas operator=s possession was
visible, open, exclusive, and unequivocal, the court of appeals highlighted
testimony from the purchaser that he actually saw the operator coming in and
out of the property and operating the wells before the purchase of the
property.  Id. at *4.  The court of appeals found that this evidence put
the purchaser on notice to investigate the rights under any existing leases.  Id. 
In contrast, the only evidence Texoma points to in this case is the fact that
the billboard was in existence on the property at the time of the sale and the
testimony from Don Spencer regarding his comments to Roger Hooten about revenue
from the sign.  As noted above, the evidence in this case was disputed as to
whether the billboard appeared to be abandoned, and Roger Hooten denied the conversation
with Spencer regarding revenue. 








Likewise, we find other authority cited by Texoma in
support of its constructive notice argument unpersuasive.  In each of the
cases, there were facts that put the purchaser on notice that further inquiry
was necessary.  See, e.g., Fletcher v. Minton, 217 S.W.3d 755,
761 (Tex. App.CDallas 2007, no pet.) (presence of cows, a fence, and
equipment, coupled with observation by purchaser=s agent of the
occupant going to and from property was sufficient to put purchaser on notice);
Startex First Equip. Ltd. v. Aelina Enters., Inc., 208 S.W.3d 596, 602
(Tex. App.CAustin 2006, pet. denied) (lease was recorded in deed
records, plus Ainquiry notice@ was triggered
where occupant was operating gasoline sales business from premises); Texas
Wood Mill Cabinets, Inc. v. Butter, 117 S.W.3d 98, 105 (Tex. App.CTyler 2003, no
pet.) (statute relating to mechanics= and materialmen=s lien provided
for constructive notice; additionally, purchaser=s personal
knowledge of improvements being made put purchaser on notice lien can be filed).
 There are no such facts in this case.  The mere existence of the billboard
is not sufficient to conclusively establish a duty to ascertain because there
was also evidence that the billboard appeared to be abandoned.  The trial court
resolved the factual dispute in favor of The Siblings.

Because there was more than a mere scintilla of evidence to
support an implied finding that Texoma=s possession was
not unequivocal, the trial court properly concluded that the lease agreement
was not binding on The Siblings based on constructive notice.

2.       Ratification
of the lease








Even if the evidence had conclusively established
constructive notice on the part of The Siblings, Texoma would still have to
show, under the terms of the 1998 lease agreement, that The Siblings accepted a
renewal of the lease agreement for the 2006B2007 term.  Texoma
argues that The Siblings accepted a renewal of the lease by depositing the
April 2006 rent check that Texoma sent to The Siblings, thereby ratifying the
terms of the lease.  The Siblings argues that there was no acceptance of the
check, and thus no meeting of the minds, as required to establish a binding
contract.  We find that there was disputed evidence with regard to whether The
Siblings accepted the April 2006 rent check with full knowledge of the facts. 
Thus, Texoma=s legal sufficiency challenge based on ratification is
without merit.

To establish the existence of a binding contract, Texoma
had to establish that there was a meeting of the minds with regard to the
agreement; that is, there must be a showing that The Siblings had an intention
of making the contract.  See Dhingra v. Mendelow, No. 14-00-00770-CV,
2001 WL 1136149, at *3 (Tex. App.CHouston [14th Dist.]
Sept. 27, 2001, no pet.) (not designated for publication) (AThere can be no
agreement when one party has an intention to make it, but the other has not.@).  Under the
doctrine of ratification, any act based upon a recognition of the contract as
existing or any conduct inconsistent with an intention of avoiding it has the
effect of waiving the right of recission.  See Rosenbaum v. Texas Bldg.
& Mortgage Co., 140 Tex. 325, 167 S.W.2d 506, 508 (1943); Dhingra,
2001 WL 1136149, at *3.  Ratification occurs where: (1) there is adoption or
confirmation by a person, (2) with knowledge of all material facts, (3) of a
prior act which did not then legally bind that person and which that person had
the right to repudiate.  Vessels v. Anschutz Corp., 823 S.W.2d 762, 764
(Tex. App.CTexarkana 1992, writ denied); see also Dhingra,
2001 WL 1136149, at *3.








After reviewing the evidence under the applicable standards
of review, we find that there were fact issues to be resolved by the trier of
fact with regard to The Siblings= alleged
acceptance of the April 2006 rent check.  Texoma sent the check to a post
office box owned by Jackson Hewitt Tax Services.  The check had no cover letter
or other notation on it explaining the purpose of the check.  Nathaniel Hooten
testified that he received the check, thought it was for payment of tax
services, and promptly deposited it into the bank account for the company that
owned the Jackson Hewitt tax franchise.  Texoma is correct that the check was
made out to The Siblings and that it was a mistake for Nathaniel to deposit it
in the Big 5 Investments bank account.  However, Nathaniel explained that it
was very unusual for The Siblings to receive any checks (he was not aware of
any prior checks), the check was received during busy tax season, and he simply
did not realize at the time that the check was made to The Siblings.  Nathaniel
conceded that he contacted Texoma to determine the name of the signator on the
check, but he did not get any other information regarding the check.  Once he
realized what the check was for, a refund was promptly issued to Texoma. 
Crediting the evidence that is favorable to the trial court=s judgment, as we
must, and allowing issues of the credibility of the witnesses to be decided by
the fact finder, legally sufficient evidence supports an implied finding of
fact that The Siblings did not accept by ratification the terms of the lease
agreement.  The trial court thus could correctly conclude that there was no
binding agreement between Texoma and The Siblings.

Texoma argues that The Siblings= unexpressed
mental thoughts or reservations regarding the check are immaterial to the
question of whether The Siblings accepted the rent check, citing Oram v.
General Am. Oil Co. of Tex., 513 S.W.2d 533 (Tex. 1974).  In Oram,
however, the defendant continued to accept payments even after she learned of
the true terms of the agreement.  See id. (AShe has been fully
aware of the terms of the lease and by continuing to accept the benefits of
performance thereunder by the lessee, she has ratified and affirmed the lease
as her own act.@).  Once The Siblings learned the true
nature of the April 2006 rent check, The Siblings tendered a refund of the
check to Texoma.  Texoma=s representative Cummins conceded
that, had The Siblings not deposited the check and instead returned it to
Texoma, Cummins would have considered the lease terminated.  Here, The
Siblings did not continue to accept benefits under the lease once it learned
the full facts.[5]

C.      The
conversion claim

 








Although Texoma
pleaded a claim for conversion, the trial court made no express findings of
fact or conclusions of law with regard to that claim.  Texoma does not provide
any argument, citation to authorities, or citation to the record with regard to
its conversion claim.  We, therefore, hold that Texoma has waived any challenge
to the lack of findings or conclusions with regard to the conversion claim.  See
Tex. R. App. P. 38.1(i); Garza
v. Texas Alcoholic Beverage Comm=n, 138 S.W.3d 609,
616 (Tex. App.CHouston [14th Dist.] 2004, no pet.).

CONCLUSION

The evidence
presented at trial was legally sufficient to support the trial court=s conclusion that
there was no binding agreement between Texoma and The Siblings with regard to
the 1998 lease agreement and that The Siblings was not liable to Texoma (other
than with respect to the refund of the April 2006 rent check).  Accordingly, we
affirm the trial court=s judgment.

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Panel consists of Justices Yates, Guzman, and Sullivan.









[1]  Texoma=s representative testified that the
lawn around the sign had in fact been cut in January 2006.





[2]  It is not clear from the record when Nathaniel
received the April 2006 rent check.  The Bank=s stamp on the check reflects that it was deposited on April 27, 2006. 
Nathaniel stated that he deposited the check within a few days after his
receipt of the check.





[3]  Nathaniel did call Texoma after receiving the check
because he could not read the signature.  He only found out the name on the check
was Cummins and did not request any other information.





[4]  We also need not address Texoma=s second and third issues because The Siblings does
not appear to argue in its brief that the 2005B2006 payment to Don Spencer had any effect on the lease agreement and
it concedes that the statute of frauds does not apply.





[5]  To the extent Texoma contends that constructive
knowledge can provide the Aknowledge of
the full facts@ necessary for purposes of ratification, Texoma cites
no authority for that proposition, and we have  located none.  Accordingly, we
decline to hold that ratification may be based on constructive knowledge under
the facts of this case.