Mark **STOLZ** d/b/a Paradise Tanning Salon, Appellant,

v.

Steve **HONEYCUTT** d/b/a Honeycutt Air Conditioning and Refrigeration, and R.C. "Bob" Kyle, d/b/a R.C. Kyle Construction Co., Appellees.

No. 14–98–01302–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 22, 2001.

Keith T. Gilbert, Houston, for appellants.

William S. Chesney, III, Houston, for appellees.

Panel consists of Justices SEARS, CANNON, and LEE.*

**OPINION**

NORMAN LEE, Justice (Assigned).

Mark Stolz, d/b/a Paradise Tanning Salon, appeals from a trial court award of $10,906.96 on a subcontractor's claim brought by Steve Honeycutt d/b/a Honeycutt Air Conditioning and Refrigeration. Stolz contends that the trial court erred in granting judgment for Honeycutt: (1) because the court lacked jurisdiction over the dispute, (2) because the indemnity bond filed by Stolz precluded recovery against him, and (3) because the claim was other-

* Senior Justices Ross A. Sears, Bill Cannon, and Norman Lee sitting by assignment.

wise settled and released before the lien was filed. Stolz also appeals from the trial court's refusal to grant him judgment in his cross-claim against the original contractor, Bob Kyle d/b/a R.C. Kyle Construction Co. We reverse and render as to Honeycutt's claims against Stolz and affirm as to Stolz's claims against Kyle.

## I. Background

On March 19, 1992, Mark Stolz entered into a written contract with R.C. Kyle for Kyle to undertake certain improvements to property leased by Stolz. The agreement was amended on April 20, 1992, to increase the capacity of air conditioning to be installed from seven tons to 10 tons. The total contract price to be paid by Stolz was $37,858.35. Kyle thereafter subcontracted with Steve Honeycutt for the installation of the air conditioning at a price of $7,900. The specified air conditioning improvements were completed on June 7, 1992.

By registered letter dated June 26, 1992, Honeycutt gave notice to Stolz that an account for $7,900, owed by Kyle to Honeycutt for the work done on Stolz's leasehold, was still unpaid. The letter demanded payment of the account and stated that "[i]f this account remains unpaid you may be personally liable and your property subjected to a lien unless you withhold payments from KYLE CONSTRUCTION CO .... or unless it is otherwise paid or settled."

On June 30, 1992, Stolz met with R.C. Kyle and Wendy Honeycutt, who was representing Steve Honeycutt. During the course of this meeting, Wendy Honeycutt accepted a check from Kyle that was made out for $7,800 and post-dated to July 9, 1992. Wendy Honeycutt and Kyle then signed a document that purported to release all claims which either of them had against the other. Also at that meeting, Stolz gave a check to Kyle for $7,858.35, the final amount Stolz owed to Kyle for the leasehold improvements.

On July 17, 1992, the check that Kyle had given to Honeycutt for $7,800 was returned for nonsufficient funds. On August 14, 1992, Honeycutt filed an affidavit for a Mechanic's and Materialman's Lien and forwarded a copy of the affidavit to Stolz and Kyle. On November 9, 1992, Honeycutt filed a lawsuit against Stolz in Harris County Court of Law No. 2. After incurring a sanction for failure to respond to discovery, Honeycutt filed a nonsuit on July 19, 1993, the day on which trial was scheduled to begin. Two days later, Honeycutt filed the present action in County Court of Law No. 3.

On or about November 10, 1993, Stolz sold the tanning business. To release the subcontractor's lien and facilitate the sale, he obtained a $17,000 indemnity bond with Universal Surety of America.

On August 25, 1997, the trial court entered an order dismissing Honeycutt's lawsuit for want of prosecution. Honeycutt then filed a motion to reinstate, which the trial court granted, conditioned on the payment of $750 as reasonable attorney's fees to Stolz's attorney by November 7, 1997. Although Stolz's attorney eventually received the check for $750, it is disputed whether the check was mailed on November 7th or 8th.

A trial to the court was held on November 25, 1997, and the court awarded judgment to Honeycutt in the amount of $7,858.35, plus prejudgment interest of $3,048.61, for a total of $10,906.96 plus post-judgment interest. The court also ruled that Stolz take nothing in his counterclaim against Honeycutt, but the court made no express ruling in regard to Stolz's cross-claim against R.C. Kyle.

In his first three points of error, Stolz contends: (1) that the trial court had no

jurisdiction, (2) that the indemnity bond filed by Stolz precluded Honeycutt from recovering against him, and (3) that the lien was otherwise settled and released before the lawsuit was filed. In his fourth point of error, Stolz contends that the trial court erred in refusing to grant him affirmative relief in his cross-claim against Kyle.

## II. Reinstatement

■ Stolz first contends that the trial court lacked jurisdiction because Honeycutt failed to timely satisfy the condition set for reinstatement by the court after the case was dismissed for want of prosecution on August 25, 1997. After the dismissal, Honeycutt filed a motion to reinstate the case, and the trial court entered an order granting the reinstatement conditioned on Honeycutt paying $750 to Stolz by November 7, 1997, apparently as payment on the discovery sanctions imposed by the prior court. Honeycutt sent a check by U.S. Mail. The postmark on the envelope indicates that the date mailed was November 8, 1997, whereas the meter stamp on the envelope indicates November 7, 1997, and Honeycutt's counsel stated to the court that he placed the payment in the mailbox on November 7.

We begin our analysis by noting that the trial court erred in imposing the condition on the reinstatement. Rule 165a(3) of the Texas Rules of Civil Procedure governs reinstatement after a dismissal for want of prosecution. The rule states in part:

> The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

TEX.R.CIV.P. 165a(3).

■ Under this rule, once a trial court determines that the failure to appear was not intentional or due to conscious indifference and was reasonably explained, the trial court has no discretion and must reinstate the case. *Burns v. Drew Woods, Inc.*, 900 S.W.2d 128, 129 (Tex.App.—Waco 1995, writ denied). In the present case, the trial court did reinstate the lawsuit, so it must have found that Honeycutt's failure to appear for trial met the conditions in the rule, even though such findings do not expressly appear in the record. *See Price v. Firestone Tire & Rubber Co.*, 700 S.W.2d 730, 733 (Tex.App.—Dallas 1985, no writ)(since trial court initially reinstated case, court of appeals presumed appropriate findings were made). *See also Berry v. Riley*, 551 S.W.2d 74, 76 (Tex.Civ.App.—Houston [1st Dist.] 1977, writ ref. n.r.e.)(no presumption that required finding of facts were made under Rule 165a when no order dismissing case or motion for reinstatement appears in record). Furthermore, Stolz does not dispute that the court made the appropriate findings.

In *Price*, the court considered a case with similar procedural facts. The plaintiff in that case filed a motion to reinstate that the trial court granted conditioned on the plaintiff's paying of the defendant's expenses relating to an earlier trial date. When the plaintiff failed to fulfill the condition, the trial court dismissed the case. In holding that the trial court abused its discretion in so doing, the court of appeals relied on the mandatory nature of Rule 165a(3), i.e. "[t]he court *shall* reinstate the case...." *Price*, 700 S.W.2d at 733.

We agree with the court's interpretation in *Price*. In ruling on a motion to reinstate under Rule 165a, a trial court has a single determination to make, and, having made that finding, the rule allows the court no further latitude or discretion to impose additional conditions on the reinstatement. *Price*, 700 S.W.2d at 733. *See*

also *Burns,* 900 S.W.2d at 129. The trial court in the present case clearly had no authority to impose the condition of payment; therefore, Honeycutt's alleged failure to timely fulfill the condition cannot defeat reinstatement.

It is a fortuitous happenstance in this case that the court below reinstated the lawsuit, as it should have under the rule absent the condition. We will not then look behind the correct result to analyze whether the condition was actually met, particularly since it was Stolz who requested the court set the condition in the first place. *See Union City Body Co., Inc. v. Ramirez,* 911 S.W.2d 196, 202 (Tex.App.—San Antonio 1995, no writ)(a party may not lead the court into error and then complain about it on appeal). To hold otherwise would be to encourage litigants to rewrite the rules of procedure to their own benefit.

We overrule Stolz's first point of error.

## III. Substantive Issues

In his second and third points of error, Stolz asserts that the trial court erred in entering judgment for Honeycutt because the indemnity bond he obtained extinguished Honeycutt's claims and because in settling and releasing the claim against Kyle, Honeycutt waived the derivative claims against Stolz. In making these claims, Stolz is attacking the trial court's judgment, its conclusions of law and statutory interpretations, and, to a limited extent, its findings of fact.

 We review the trial court's conclusions of law *de novo* as legal questions.

*Smith v. Smith,* 22 S.W.3d 140, 143–44 (Tex.App.—Houston [14th Dist.] 2000, n.pet.h.); *Piazza v. City of Granger,* 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ). We will follow a trial court's conclusion of law unless it is erroneous as a matter of law. *Smith,* 22 S.W.3d at 144. Even an incorrect conclusion of law will be followed if the controlling findings of fact support a correct legal theory. *Piazza,* 909 S.W.2d at 532. We review a trial court's findings of fact under the same legal standards used to review jury verdicts for sufficiency of the evidence. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.*

### A. Subcontractor Remedies

 Under Texas law, a subcontractor enjoys no direct lien against the owner's property but must instead rely on his statutory, derivative rights to collect funds due by the owner to the contractor or, failing that, to impose a lien on the property. *Thermo Tech, Inc. v. Goodyear Tire and Rubber Co., Inc.,* 643 F.2d 1173, 1178 (5th Cir.1981); *First Nat'l Bank v. Sledge,* 616 S.W.2d 954, 957 (Tex.Civ.App.—Fort Worth 1981), *affirmed in part, reversed in part on other grounds,* 653 S.W.2d 283 (Tex.1983).[1] The two main statutory schemes providing such rights to spurned subcontractors are: (1) the "Trapping Statute," TEX. PROP.CODE ANN. § 53.081–85 (Vernon 1995); and (2) the "Retainage Statute," *Id.* § 53.101–106.[2]

---

1. No issue is made on appeal of the fact that Stolz was a lessee of the property and not the owner or that the property owner was not a party to the lawsuit. We note, however, that generally when "a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor." *Diversified Mortgage Investors v. Lloyd D. Blaylock General Contractor, Inc.,* 576 S.W.2d 794, 805 (Tex.1978); *2811 Associates, Ltd. v. Metroplex Lighting and Elec.,* 765 S.W.2d 851, 853 (Tex.App.—Dallas 1989, writ denied).

Under the Trapping Statute, when an owner receives proper notice that the original contractor has failed to pay funds owed on work done on the property, the owner may withhold payments to the contractor in an amount sufficient to cover the claim for which he received notice. *Id.* § 53.081. If the owner pays any of the "trapped" funds to the contractor after receiving notice, the claimant may obtain a lien on the property to the extent of the money paid. *See Id.* § 53.084(b); *First Nat'l Bank v. Sledge*, 653 S.W.2d 283, 286 (Tex.1983).

The Retainage Statute provides protection that is in some ways broader in application but also potentially more limited in monetary terms than the Trapping Statute. Under section 53.101, an owner under an original contract on which a mechanic's lien may be claimed is required to retain in his possession ten percent of the contract price, or ten percent of the value of the work, for 30 days after the work is completed. TEX. PROP.CODE ANN. § 53.101(a). A claimant may then secure a lien on the retained funds if he provides the owner with proper notice under the statute and files an affidavit claiming a lien no later than the 30th day after the work was completed. *Id.* § 53.103. The amount trapped under the Trapping Statute (as big as the claim is big) may be more than the required retainage under the Retainage Statute (a flat ten percent of contract price or value). *Sledge*, 653 S.W.2d at 286.

In its judgment and in its conclusions of law, the trial court held Stolz liable for the funds due Honeycutt based both on its finding that Honeycutt properly trapped

funds in Stolz's possession and on its finding that Stolz failed to retain ten percent from his contract with Kyle for 30 days. As discussed below, we find that the trial court erred in finding Stolz liable in both regards, because, although Honeycutt's claims survived the indemnity bond, the underlying claims against Kyle were already settled thus precluding recovery on the derivative claims against Stolz.

## B. The Indemnity Bond

The trial court found that Honeycutt gave sufficient notice to trap funds that Stolz owed to Kyle under the contract and then timely filed an affidavit to secure a lien on the property. On appeal, Stolz first contends that Honeycutt cannot recover against him because he, Stolz, filed an indemnity bond to release the lien so that he could sell the property. Stolz insists that Honeycutt was required to sue on the bond in order to recover any money from the trapping of funds. Honeycutt's pleadings reveal that he did, in fact, fail to specifically reference the bond or name the surety as a party defendant.

Section 53.171 permits anyone to file a bond to indemnify against a mechanic's lien. TEX. PROP.CODE ANN. § 53.171(a). An action on the bond must be filed no later than one year after the date on which notice of the bond is served. *Id.* § 53.175(a). Stolz obtained an indemnity bond from Universal Surety of America and gave notice to Honeycutt. As the trial court correctly ruled in the amended judgment, Honeycutt's failure to timely sue on the bond precludes recovery against the surety of the bond. *See Id.; Roylex v. Langson*, 585 S.W.2d 768, 773 (surety was

---

**2.** These statutes address avenues of recourse for a variety of possible claimants including contractors and subcontractors, artisans and mechanics who perform labor or services, and providers of materials. *See, e.g.*, TEX.PROP.

CODE ANN. § 53.102. For purposes of clarity and simplicity, we will discuss the statutes as they pertain to the owner-contractor-subcontractor relationship.

released because not sued until after statute of limitations had run). The question, then becomes, having failed to sue on the bond, did Honeycutt retain a viable claim for personal judgment against Stolz?

 As the Texas Supreme Court has stated, "[t]he owner is personally liable for any funds paid to the original contractor in violation of either [the trapping or retainage provisions]." *See Exchange Sav. & Loan Ass'n. v. Monocrete Pty. Ltd.*, 629 S.W.2d 34, 37 (Tex.1982)(dicta). *See also Wilson v. Sherwin–Williams*, 110 Tex. 156, 160–61, 217 S.W. 372, 373 (Tex.1919)(personal liability under trapping provisions); *Donahue v. Rattikin Title Co.*, 534 S.W.2d 156, 159 (Tex.Civ.App.—Fort Worth 1976, no writ)(personal liability under retainage provisions). Furthermore, the right of a claimant to pursue a personal judgment against the owner is clearly recognized in the mechanic's lien statutes. Section 53.056 states that: "the notice to the owner must state that if the claim remains unpaid, the owner may be *personally liable* and the owner's property may be subjected to a lien...." TEX. PROP.CODE ANN. § 53.056(d)(emphasis added). And, in fact, the notice given to Stolz by Honeycutt in this case included substantially similar language. Additionally, section 53.084 states that once the owner receives the notice, the lien is secured, and the claim is reduced to a final judgment, "the *owner is liable* and the owner's property is subject to a claim...." *Id.* at 53.084(b)(emphasis added). Thus, case law and the statutes clearly envision that a claimant could seek a personal judgment against the owner.[3]

The owner may indeed obtain an indemnity bond, but the purpose of this bond is to remove the lien on the property. *See* TEX.PROP.CODE ANN. §§ 53.157, 53.171(a). *See also Kelley v. Bluff Creek Oil Co.*, 158 Tex. 180, 184, 309 S.W.2d 208, 211 (Tex.1958)(indemnity bond substitutes surety in place of lien as security on claim). The bond protects absolutely someone acquiring an interest in the property, be he purchaser, insurer of title, or lender, from prosecution of the mechanic's lien. *See* TEX.PROP .CODE ANN. § 53.174(b). The bond does not supplant the underlying claim on which the lien is based.

 A claimant on a properly filed mechanic's lien has a right to pursue a personal judgment against the property owner that continues even after the owner obtains and records an indemnity bond to remove the lien. Attacking the bond should certainly be the preferred method, as collection would generally be much easier and more assured, but the right to pursue personal judgment remains. We therefore overrule Stolz's second point of error.

### C. Trapping Provisions

 Stolz next contends that the trial court erred in rendering judgment for Honeycutt because the claims Honeycutt makes against Stolz are only derivative of the claim that Honeycutt has against R.C. Kyle, the general contractor. Stolz specifically states that Honeycutt's claim against Kyle was released and settled at the June 30, 1992, meeting between Stolz, Wendy Honeycutt, and Kyle, during which Kyle gave Honeycutt a postdated check in the amount of $7,800. Also at that meeting, both Kyle and Wendy Honeycutt signed a

---

**3.** Note, however, that in order to pursue a money judgment against the owner a derivative lien claimant must still perfect his lien, at least in the absence of privity of contract or other circumstances that could render the owner personally liable. *See Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 866–67 (Tex. App.—Austin 1984, writ ref'd n.r.e.); *Lopez v. Bonded Constr. And Supply Co.*, 594 S.W.2d 809, 813 (Tex.Civ.App.—Waco 1980, no writ).

document that stated in relevant part as follows:

> This indenture made this 30th day of June, 1992 between Wendy Honeycutt of Honeycutt Air Conditioning and Refrigeration, of the one part, and Bob Kyle, of R.C. Kyle Construction, of the other part, witnesseth that each of them the said Honeycutt Air Conditioning and Refrigeration and the said R.C. Kyle Construction hereby releases the other of them from all sums of money, accounts, actions, suits, proceedings, claims, and demands whatsoever which either of them at any time had or has up to the date of these presents against the other for or by reason of or in respect of any act, cause, matter or thing.

Stolz then paid the remainder of his debt to R.C. Kyle.

As discussed above, section 53.056 of the Trapping Statute allows a subcontractor to trap funds not yet paid by the owner to the contractor. TEX. PROP.CODE ANN. § 53.056. But the ability to "trap" funds is extinguished if the "claim is otherwise paid or settled." *See Id.* § 53.056(d)(2). *See also Id.* § 53.082 ("payment is made . . . or the claim is otherwise settled"). Here, it is clear that Wendy Honeycutt's accepting of the post-dated check from Kyle and signing of the mutual release operates as a payment and settlement of the underlying claim. If the underlying claim ceases to exist the derivative claims also cease to exist. *See Id.* § 53.056(d)(2). *See also Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 347 (Tex.1992)(wrongful death claim); *Hart v. Traders & Gen. Ins. Co.,* 144 Tex. 146, 149, 189 S.W.2d 493, 494 (1945)("a release is a bar to any right of action growing out of the matter discharged").

Honeycutt now suggests that even if the claim was at one point settled and released, the fact that the check was returned for insufficient funds means that

there was a failure of consideration that, in effect, reinvigorates the original claim and thus the derivative claims. But viewed from the time that Stolz made his final payment to Kyle, there was no then existing subcontractor claim that could have trapped the unpaid funds. The trap was itself released, and once the funds were paid, they were no longer subject to being trapped.

We further note that the release signed in this case was a mutual release wherein Honeycutt and Kyle each purported to release the other for all claims which either of them may have had against the other, and the four corners of the document do not reference any payment as a part of consideration or performance. *See generally Buddy L, Inc. v. General Trailer Co., Inc.,* 672 S.W.2d 541, 547 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)(discussing consideration for mutual releases). The return of the check would not then invalidate the agreement on its face. Because the underlying claim of Honeycutt against Kyle had been paid and settled, the trial court erred in holding Stolz liable for the failure to trap funds.

### D. Retainage Provisions

██ Unlike the Trapping Statute, the Retainage Statute does not have a specific provision releasing the owner from his obligations if the subcontractor's claim is paid or otherwise settled. *See* TEX.PROP. CODE ANN. § 53.101–106. The 30 day retention provisions therefore appear to create a strict requirement that is not waivable by a subcontractor's action or inaction. *See, e.g., Sledge,* 653 S.W.2d at 286 (owner has statutory duty to retain ten percent with or without notice of a claim). This position makes sense because, in any given case, there may be other subcontractors who could make claims on the retained funds, or, as happened here, the payment

from the contractor to the subcontractor could fall through. Stolz, therefore, improperly paid Kyle the last ten percent of the contract price before the expiration of 30 days from completion of the work.

But the fact that Stolz failed in his duty does not, by itself, mean that Honeycutt had a right to recover the ten percent. Honeycutt still had to establish that he fulfilled the requirements of the Retainage Statute in order to make a claim based on the amount of the funds that should have been retained. In order to secure a lien and make a claim on retained funds, a claimant must: (1) give the required notice under § 53.086 of the Property Code, and (2) file an affidavit claiming a lien before 30 days expires from the date of completion. TEX. PROP.CODE ANN. § 53.103. It is undisputed on appeal that Honeycutt gave the proper notice, but it is also clear that Honeycutt failed to file his affidavit until more than 30 days after completion of the work (work completed on June 7; affidavit filed on August 14).

Under a strict construction of § 53.103, Honeycutt waived his claim based on retainage by failing to timely file an affidavit. In *General Air Conditioning Co. v. Third Ward Church of Christ*, 426 S.W.2d 541 (Tex.1968), however, the Texas Supreme Court created a judicial exception to the 30 day requirement so that when an owner fails to retain ten percent for 30 days the claimant is not required to file an affidavit within 30 days in order to pursue a claim for the funds. *Id.* at 544; *Hadnot v. Wenco Distributors*, 961 S.W.2d 232, 235 (Tex. App.—Houston [1st Dist.] 1997, no writ). The apparent reasoning behind this addendum to the statute is that if there is no money on which a lien could attach, it is unreasonable to require the claimant to file an affidavit claiming a lien.

In the present case, Honeycutt accepted a check from Kyle that was post-dated past 30 days from the date of completion and signed a mutual release. Stolz clearly retained more than ten percent of the contract price until after Honeycutt accepted the post-dated check and signed the mutual release, but Stolz improperly paid the retained amount before the expiration of the 30 day retention period. However, even if Stolz had retained the funds for the full 30 days, Honeycutt had already placed himself in a position such that he had no then existing or even possible claim on any retained funds that could have accrued until well after the expiration of the retainage period. In short, by accepting the post-dated check, Honeycutt settled his claim against Kyle and thereby waived any derivative claim he may have had on the retained amount. · See *MBank El Paso Nat. Ass'n v. Featherlite Corp.*, 792 S.W.2d 472, 476 (Tex.App.—El Paso 1990, writ denied)(all rights to retained funds are contingent on having a valid lien). Stolz's failure to retain the funds for 30 days did not interfere with Honeycutt's rights to collect on the funds, as Honeycutt had already extinguished those rights himself. We hold that in this unique situation the *General Air* exception to the 30 day rule of § 53.103 does not apply. The trial court therefore erred in holding Stolz liable for the failure to retain ten percent of the contract amount. Accordingly, we grant this point of error.[4]

### E. Conclusion

 It is the general policy in Texas that when someone has to lose money because of an impecunious contractor, it

---

4. Stolz alternatively contends under this point of error that a novation occurred, but we find the argument to be without merit because Stolz was not a party to the settlement and mutual release between Honeycutt and Kyle. See *MBank*, 792 S.W.2d at 477.

should be the owner and not the subcontractor. *See Hayek v. Western Steel Co.,* 478 S.W.2d 786, 795 (Tex.1972). This rule reflects the difficulty a subcontractor (or mechanic or materialman, etc.) would have in repossessing services or goods once expended to the benefit of the property, as well as the fact that the owner has several statutory ways to hold money back from the contractor (including the trapping and retainage statutes). *See Id.* While recognizing this general rule, we hold that when the subcontractor knowingly and willingly undertakes a course of action that jeopardizes or extinguishes his underlying claim against the contractor, the general policy does not apply to maintain the burden on the owner.

Furthermore, we wish to emphasize that our holding in this case is limited to the specific facts of this case and should not be read as releasing an owner from his obligations under the Retainage and Trapping statutes under other sets of facts not before this court. The subcontractor in this case accepted a post-dated check that took him out of the 30 day provisions of the statutes. Additionally, a mutual release was signed between contractor and subcontractor, and all this was done in the presence of the owner at the same meeting wherein the owner then paid the final amount due to the contractor in reliance on the agreement and settlement. Even slight changes in the facts may have necessitated a contrary holding.

### IV. Attorney's Fees

 Stolz next contends that if the judgment of the trial court is reversed, he should be awarded attorney's fees in this case. Section 53.156 of the Property Code states that in any proceeding regarding a mechanics lien or various related matters, "the court may award costs and reasonable attorney's fees as are equitable and just."

The trial court declined to award attorney's fees to either party. Given the confusion exhibited on the issues in this case and the basic failure of any of the parties to have followed the letter of the law on mechanic's liens, we agree with the trial court's assessment that neither Honeycutt nor Stolz is entitled to recover attorney's fees from the other. We therefore overrule this point of error.

### V. Cross–Claim

 Lastly, Stolz contends that the trial court erred in not granting him judgment in his cross-claim against R.C. Kyle. In his brief, Stolz states this point of error as an alternative point should this court not reverse the trial court's judgment favoring Honeycutt. Since we do reverse the judgment of the trial court in that regard, this point of error is, for the most part, now moot.

Under this point, however, Stolz also contends that even should the trial court's judgment for Honeycutt be reversed, the trial court further erred in not awarding him attorney's fees against Kyle. Stolz asserts that Kyle was required by statute to defend against Honeycutt's action, and, in failing to do so, Kyle made himself liable for the attorney's fees and costs expended by Stolz in defending against the claim, citing Tex.Prop.Code Ann. § 53.153 and § 53.156.

 A careful review of the pleadings, however, reveals that Stolz failed to make this claim for attorney's fees and costs in the trial court. In his cross-claim against Kyle, Stolz alleged DTPA violations, breach of contract, and actual and constructive fraud, but he made no allegations against Kyle based on the property code, either in the pleadings, at trial, or in post-trial attacks on the judgment. A party may not appeal a case on a new or different theory than it used in the trial court.

*Hilsher v. Merrill Lynch, Pierce Fenner & Smith,* 717 S.W.2d 435, 441 (Tex.App.—Houston [14th Dist.] 1986, no writ). *See also Swink v. Alesi,* 999 S.W.2d 107, 110 (Tex.App.—Houston [14th Dist.] 1999, no pet.)(on appeal, party claimed contractual right to attorney's fees but only alleged statutory right in trial court). Accordingly, this point of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed as to Stolz's claims against Kyle and reversed and a take nothing judgment rendered as to Honeycutt's claims against Stolz.