**MORRELL MASONRY SUPPLY, INC., Appellant,**

v.

**Cedrick K. LOEB, Sabrina Loeb, and Cellar Door Homes, Inc., Appellees.**

No. 14–10–00117–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 2011.

Rehearing Overruled Sept. 28, 2011.

Stephen D. Fox, Houston, for appellant.

Andrew P. McCormick, Bellaire, for appellees.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

Appellant Morrell Masonry Supply, Inc., appeals the judgment from a bench trial in which the trial judge concluded the appellant should take nothing in its breach-of-contract claim against the Loebs. On appeal, Morrell contends the trial court erred by (1) failing to take full judicial notice of a construction contract between the Loebs and Cellar Door Homes, Inc.; (2) concluding Morrell never gave the Loebs timely notice of its lien claim; (3) concluding Morrell never gave timely notice nor perfected a claim to any retainage funds required to be held by the Loebs; (4) concluding Mor-

rell's lien claim on the Loebs' homestead was null and void; and (5) awarding attorney's fees to the Loebs. We affirm.

### I

This is a construction-industry contract case. Cedrick and Sabrina Loeb, husband and wife, contracted with Cellar Door Homes, Inc., to build them a new home. Cellar Door, the original contractor for the project, in turn hired a stucco subcontractor who purchased materials on credit from Morrell.[1] But the subcontractor never paid for the materials, leaving a balance of $8,476.74.

Morrell sent the Loebs and Cellar Door notice of its claim against the stucco subcontractor via certified mail. The notice further informed the Loebs that, as owners of the property, they may be held personally liable for the debt and a lien may be attached to their property. The notice included copies of unpaid invoices ranging from August 21 to November 10, 2007. The Loebs signed for the notice of the unpaid balance on January 15, 2008. After receiving the notice, the Loebs authorized the release of the remaining $54,514 balance of their construction funds to Cellar Door. On February 11, 2008, Morrell attempted to file a lien on the Loebs' homestead, and on March 12, 2008, Morrell sued the Loebs and Cellar Door, seeking foreclosure on its materialman's lien. Morrell also sought quantum-meruit damages as well as damages for misapplication of construction-trust funds under Chapter 162 of the Texas Property Code, and further requested an award of statutory interest on the unpaid balance.

After a bench trial for which Cellar Door never appeared, the trial court concluded Morrell should take nothing and

---

1. Although the contract between the Loebs and Cellar Door was never admitted into evidence, the parties do not dispute that Cellar Door was the original contractor.

awarded the Loebs attorney's fees. The trial judge filed findings of fact and conclusions of law reflecting the court's conclusion that Morrell did not give the Loebs timely notice of its lien claim or its claim to retainage funds the Loebs were statutorily required to withhold. The trial court further concluded Morrell never perfected a valid lien on the Loebs' homestead and that its lien claim was null and void because it failed to satisfy requirements outlined by the Property Code.

## II

### A

■ We first address Morrell's second issue, in which it argues the trial court erred in concluding Morrell never gave the Loebs timely notice of its lien claim. Because a derivative claimant has no contractual relationship with the property owner, the claimant is required to give the property owner timely notice of an unpaid balance before attempting to file a lien against the property.[2] *See* Tex. Prop.Code § 53.252(b). A claimant must serve timely notice for a subsequently filed lien to be valid. *See* Tex. Prop.Code § 53.252(a). Section 53.252 of the Property Code requires claimants other than the original contractor to provide the property owner with written notice of the unpaid balance "not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material

was delivered." Tex. Prop.Code § 53.252(b).

The $8,476.74 unpaid balance Morrell claims it is owed is reflected through a series of thirteen invoices beginning on August 21, 2007, and ending on November 10, 2007. The trial court found Morrell failed to give the Loebs timely notice of the unpaid balance documented by the individual invoices except for the last invoice, which is dated November 10, 2007, and reflects a balance of $326.60.[3] Morrell gave the Loebs notice of its lien claim via certified mail in a letter dated January 9, 2008, with the "green card" reflecting the Loebs received the notice on January 15, 2008. The first twelve invoices are dated in the months of August, September, and October of 2007. Accordingly, the notice deadline was October 15, 2007 for the August invoices; November 15, 2007 for the September invoices; and December 15, 2007 for the October invoices. *See* Tex. Prop.Code § 53.252(b). The due date for the lone November 2007 invoice was January 15, 2008; therefore, the notice of lien claim was sufficient only as to the November 2007 invoice for $326.60. *Id.* The trial court did not err in calculating the statutory deadlines for notice of a lien claim under section 53.252(a) of the Property Code.

Additionally, the trial found the pre-lien claim notice insufficient because it did not include the complete statutory notice required by section 53.254(g) of the Property Code, which we include here in full:

---

2. There are various provisions of the Property Code applying somewhat different notice requirements under different scenarios. In this case, it is undisputed that the Loebs' property is their homestead, and that the notice provisions concerning homesteads specifically apply. For the sake of clarity, we refer only to those notice provisions.

3. In its sixth finding of fact, the trial court found Morrell did not meet the deadlines imposed by section 53.252 of the Property Code, and in a handwritten annotation added "except for the 11/10/08 invoice in the amount of $326.60." There are no 2008 invoices in the record, and we assume the trial court simply made a typographical error and intended to refer to the invoice dated November 10, 2007.

For the lien on a homestead to be valid, the notice required to be given to the owner under Section 53.252 *must include or have attached* the following statement:

"If a subcontractor or supplier who furnishes materials or performs labor for construction of improvements on your property is not paid, your property may be subject to a lien for the unpaid amount if:

(1) after receiving notice of the unpaid claim from the claimant, you fail to withhold payment to your contractor that is sufficient to cover the unpaid claim until the dispute is resolved; or

(2) during construction and for 30 days after completion of construction, you fail to retain 10 percent of the contract price or 10 percent of the value of the work performed by your contractor. "If you have complied with the law regarding the 10 percent retainage and you have withheld payment to the contractor sufficient to cover any written notice of claim and have paid that amount, if any, to the claimant, any lien claim filed on your property by a subcontractor or supplier, other than a person who contracted directly with you, will not be a valid lien on your property. In addition, except for the required 10 percent retainage, you are not liable to a subcontractor or supplier for any amount paid to your contractor before you received written notice of the claim."

Tex. Prop.Code § 53.254(g) (emphasis added). The trial court found the pre-lien claim notice filed in this case failed to include the complete notice required by statute, and Morrell concedes on appeal that its notice omitted the statement's last sentence: "In addition, except for the required 10 percent retainage, you are not liable to a subcontractor or supplier for any amount paid to your contractor before you received written notice of the claim." Based on this finding, the trial court concluded Morrell's lien claim is null and void.

## B

■ Morrell does not argue the trial court incorrectly calculated the statutory deadline to give notice of a lien claim. Rather, it argues that stipulations offered at trial establish that the sections 53.081–085 of the Property Code, commonly referred to as the "fund-trapping statute," required the Loebs to "hold back" enough money to pay the unpaid balance before exhausting their construction funds in payments to the original contractor.

■ The fund-trapping statute enables a claimant to trap, in the owner's hands, funds payable to the general contractor if the owner receives notice from the claimants that they are not being paid. *See* Tex. Prop.Code § 53.081; *Hadnot v. Wenco Distrbs.*, 961 S.W.2d 232, 235 (Tex.App.-Houston [1st Dist.] 1997, no writ). If the owner pays any money to the general contractor after receiving notice from the claimants, the owner's property will be subject to a lien to the extent of the money paid. *See* Tex. Prop.Code § 53.084; *Stolz v. Honeycutt*, 42 S.W.3d 305, 311 (Tex. App.-Houston [14th Dist.] 2001, no pet.); *Hadnot*, 961 S.W.2d at 235.

Morrell seemingly argues that the January 9, 2008 pre-lien claim notice triggered the fund-trapping statute even if it was insufficient to fulfill the statutory requirements for filing a valid lien. Abandoning any argument that notice was timely served, Morrell instead points to stipulations at trial that the Loebs received the January 9, 2008 notice. Morrell also notes that $54,514 in construction funds was available for disbursement. The Loebs later paid those funds in full to the original contractor, Morrell argues, despite having

knowledge of Morrell's claim. Morrell further argues the notice it provided the Loebs "start[ed] the process by which, if the original contractor fails to give notice of intent to dispute, the owner's responsibility to pay the demand to the subcontractor becomes absolute." To support this argument, Morrell cites section 53.083(b) of the Property Code, a provision within the fund-trapping statute providing that if an original contractor does not give the property owner notice of intent to dispute a supplier's claim within thirty days of receiving notice of the claim, the original contractor "is considered to have assented to the demand and the owner shall pay the claim." Accordingly, Morrell argues the Loebs were required to cover the unpaid balance as soon as thirty days expired without notice from Cellar Door of its intent to dispute Morrell's claim.

■ Morrell's argument is flawed because it ignores the notice requirement imposed by the fund-trapping statute. Section 53.081 of the Property Code requires that the property owner must receive notice of a claim before he is authorized to withhold funds from the original contractor, and the requirements for this notice to be effective are intertwined with the requirements for effective notice of a pre-lien claim notice. A property owner is authorized to withhold from the original contractor an amount necessary to pay the derivative claimant if the owner receives notice under one of five provisions of the Texas Property Code, one of which is section 53.252, the notice requirement applicable in this case. *See* Tex. Prop.Code § 53.081. A pre-lien claim notice filed under section 53.252 is also sufficient to trigger the fund-trapping statute and authorize the property owner to withhold funds *if* the notice "substantially complies with" statutory requirements. *Id.*

We have already determined the trial court properly concluded Morrell's pre-lien claim notice did not meet statutory requirements because it was not timely delivered. And although Morrell argues it substantially complied in reproducing the statement required by section 53.254(g) of the Property Code, it makes no argument that it "substantially complied" with section 53.252 of the Property Code. Rather, it cites *Don Hill Construction Co. v. Dealers Electrical Supply Co.*, 790 S.W.2d 805 (Tex.App.-Beaumont 1990, no writ), for the proposition that the failure of a subcontractor to perfect its lien "does not release the authorization to withhold which the fund[-]trapping notice gives to the owner, nor does such failure release the owner's obligation to pay the subcontractor's claim upon an undisputed demand."

In *Don Hill*, a supplier seeking payment of a debt provided the property owner with timely pre-lien claim notice but failed to give timely notice to the original contractor as required by section 53.056 of the Property Code. *Id.* at 809. The court concluded the two notice requirements were "separate and apart from each other" and that the property owner could not escape responsibility because notice was not timely filed with the original contractor. *Id.* Even if we followed the *Don Hill* court's reasoning, it would not apply here. The parties in *Don Hill* stipulated that notice was timely served on the property owner. *See id.* at 807. Accordingly, the supplier's failure to deliver timely notice to the original contractor did not prejudice the property owner. *See Wesco Distribution Inc. v. Westport Group, Inc.*, 150 S.W.3d 553, 559 (Tex.App.-Austin 2004, no pet.) (noting the purposes of notice are: (1) to give those parties entitled to notice an opportunity to protect their interests, and (2) to prevent surprise). *Don Hill* does not command the holding that a claimant can fail to serve a property owner with timely

notice yet still reap the full benefit of the fund-trapping statute simply because the property owner acknowledges receiving notice at some later time. To so hold would be to write the deadline for timely notice out of section 53.081 of the Property Code.

### C

■ While conceding it omitted part of the required statutory statement from its pre-lien claim notice, Morrell argues it nonetheless substantially complied with section 53.254(g). Morrell argues we should apply a liberal construction to the fund-trapping statute to protect laborers and materialmen, urging that the legislature "did not intend that the materialman should lose his lien through the technicalities of a warning, where the owner was not misled to his prejudice."

We note initially that even if we agreed the statement included in Morrell's pre-lien claim notice substantially complied with statutory requirements, the notice still would have been insufficient for all the invoices except November 2007 because they were not timely delivered to the Loebs. However, because notice was timely as to the November 2007 invoice, we must further consider whether the incomplete statutory statement independently rendered the notice ineffective.

To support its argument, Morrell directs us to *Mustang Tractor & Equipment Co. v. Hartford Accident and Indemnity Co.*, 263 S.W.3d 437 (Tex.App.-Austin 2008, pet. denied). The *Mustang* court considered whether lien affidavits that omitted the date and method by which notice was sent to the property owner—which are both required by statute—substantially complied with the requirements for a valid lien affidavit outlined by section 53.054(a)(8) of the Property Code. *Id.* at 440. The court, noting that the notices identified the date and method by which they were sent, and that the parties did not dispute that the notices were timely received, concluded the omission was merely a technical defect that did not prejudice the property owner. *Id.* at 444.

But Morrell makes no effort beyond citing and explaining the holding of *Mustang* to argue why a complete reproduction of the statutory statement required by section 53.254(g) is merely a technical requirement akin to the requirement that a lien affidavit include the date and method of service. In the introduction to the body of the required statement, section 53.254(g) of the Property Code states: "For the lien on a homestead to be valid, the notice required to be given to the owner under Section 53.252 *must* include or have attached the following statement." Tex. Prop.Code § 53.254(g) (emphasis added); *see also First Nat'l Bank in Graham v. Sledge*, 653 S.W.2d 283, 287 (Tex.1983) (holding the statutory warning required by an earlier version of the fund-trapping statute is a condition precedent without which a lien cannot be imposed). The statement that follows is an explanation to the property owner of the possibility that a lien may be filed on his property and his potential liability to the derivative claimant. Without any additional argument from Morrell, we decline to hold it is a mere technical requirement that may be excused by substantial compliance.

The trial court properly concluded Morrell failed both to give the Loebs timely notice of its pre-lien claim and to include in its notice the full language required by section 53.254(g) of the Property Code. We further reject Morrell's argument that the fund-trapping statute was triggered despite Morrell's failure to comply with statutory notice prerequisites. We overrule Morrell's second issue.

## III

■ In its third issue, Morrell argues the trial court erred in concluding Morrell never gave timely notice nor perfected a claim to the statutory ten-percent retainage fund the Loebs were required to maintain.

The retainage statute requires an owner to retain ten percent of the contract price of the work until thirty days after the work is completed. *See* Tex. Prop.Code § 53.101; *Stolz,* 42 S.W.3d at 310. If the owner does not comply with this subchapter, claimants who comply with the statutory requirements have a lien, at least to the extent of the amount that should have been retained from the original contract under which they are complaining, against the property. *See* Tex. Prop.Code § 53.105(a); *Stolz,* 42 S.W.3d at 310–11; *see also Hadnot,* 961 S.W.2d at 234. A claimant has a lien on retained funds only if it "sends the notices required by this chapter in the time and manner required." Tex. Prop.Code § 53.103. Accordingly, Morrell's failure to comply with the notice requirements also defeated its claim to the retainage funds. For the same reasons outlined in Section II of this opinion, the trial court did not err in concluding Morrell failed to give notice of and perfect a claim to any retainage funds held by the Loebs. We overrule Morrell's third issue.

## IV

■ In Morrell's fourth issue, it argues the trial court erred in concluding Morrell's lien claim against the Loebs' property was null and void. Again, for the reasons explained in Section II of this opinion, the trial court properly concluded the lien claim was null and void. An additional basis for the trial court's conclusion is that Morrell's lien affidavit did not contain the following language, which section 53.254(f) requires for lien affidavits filed on homesteads: "THIS IS NOT A LIEN. THIS IS ONLY AN AFFIDAVIT CLAIMING A LIEN." Accordingly, both Morrell's prelien claim notice and its lien affidavit failed to comply with statutory requirements. The trial court did not err in concluding Morrell's lien claim on the Loebs' property is null and void.

## V

In its fifth issue, Morrell argues the trial court erred in awarding the Loebs attorney's fees in the amount of $7,000 as well as all attorney's fees incurred on appeal. Morrell argues only that the trial court erred in awarding attorney's fees because it erred in concluding Morrell failed to perfect a lien based on the arguments we have already addressed. Morrell does not present any separate argument that attorney's fees were improperly awarded even if we affirmed the trial court's judgment. And indeed, section 53.156 of the Property Code authorizes the court to award costs and reasonable attorney's fees as are equitable and just in any proceeding to foreclose a lien. With no argument from Morrell that the attorney's fees awarded in this case were unreasonable, we overrule Morrell's fifth issue.

## VI

■ In its sixth issue, Morrell contends the trial court erred in failing to grant Morrell a default judgment against Cellar Door. The record reflects Cellar Door was constructively served through the Secretary of State, but never answered. Other than the certificate of service from the Secretary of State, however, Morrell does not point us to anything in the record showing it sought or was entitled to a default judgment against Cellar Door. There is no motion for a default judgment in the record, nor is there any indication in the record that Morrell asked the trial

court for a default judgment against Cellar Door at either docket call or trial. *See* Tex.R. Civ. P. 238, 239. Moreover, the record does not appear to contain a certificate of last known address or any other documentation supporting a default judgment. *See* Tex.R. Civ. P. 239, 239a. Accordingly, upon final judgment the trial court dismissed all claims against Cellar Door. In its motion for new trial, Morrell requested for the first time a default judgment against Cellar Door; however, it did not give the trial court any indication that the prerequisites for a default judgment had been satisfied, nor did it supplement the record with a certificate of last known address, as would have been required for the trial court to grant the requested relief. Therefore, the trial court did not err in denying Morrell's request for a default judgment against Cellar Door, and we overrule Morrell's fifth issue.

## VII

In Morrell's first issue, it argues the trial court erred by taking only "partial" judicial notice of the contract between the Loebs and Cellar Door. The trial court found there was "no written contract entered into evidence during the trial" between Cellar Door and the Loebs, although the trial court apparently took "partial" judicial notice of the contract after trial but before final judgment. At any rate, Morrell made no attempt at trial to admit the contract into evidence. We need not decide Morrell's first issue, however, because even if the trial court did take "full" as opposed to "partial" judicial notice of the contract, or if Morrell had taken steps to admit the contract into evidence at trial, our holding as to Morrell's failure to give effective pre-lien claim notice and to file a valid lien would still require us to affirm. Accordingly, we do not reach Morrell's first issue.

\*　　\*　　\*

For the foregoing reasons, we affirm the trial court's judgment.