JEWELRY MANUFACTURER'S EXCHANGE, INC.,
Appellant

v.

Herman TAFOYA, d/b/a Abundant Light Electric, Appellee.

No. 05–11–00065–CV.

Court of Appeals of Texas, Dallas.

July 16, 2012.

---

Robert H. Renneker, Law Office of Renneker Robert, Dallas, TX, for Appellant.

V. Elizabeth Kellow, Marshall & Kellow, LLP, Dallas, TX, for Appellee.

Before Justices O'NEILL, MARTIN RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MARTIN RICHTER.

In this appeal from a traditional summary judgment, Jewelry Manufacturer's Exchange contends the trial court erred in granting summary judgment in favor of Herman Tafoya and in subsequently dismissing the case. We reverse the summary judgment and remand this case to the trial court for further proceedings.

*Background*

Jewelry Manufacturer's Exchange, Inc. ("JME") hired George Benfante ("Benfante") as a general contractor to perform remodeling work on JME's retail leasehold property. The initial contract between Benfante and JME totaled $19,116.75. JME modified the contract with Benfante adding $4,250 in additional charges for a total amount of $23,366.75. Subsequently, Benfante subcontracted the electrical work to be performed under the contract with Herman Tafoya, d/b/a Abundant Light Electric ("Tafoya"). The proposal submitted by Tafoya to Benfante estimated the electrical work would cost $21,320.14. After partially performing on the contract, Tafoya submitted two invoices and was

paid a total of $7,250. Tafoya received a third payment from Benfante for $6,000 in the form of a check that was returned because the bank account on which it had been written was closed. Tafoya completed 80% of the remodel project and then stopped work on or about April 26, 2010.

After Tafoya stopped work, he obtained counsel and on May 20, 2010 sent notice with statutory fund-trapping language to Benfante, JME, and Eagle–Spring Creek, L.P. and Eagle Spring, GP, LLC, ("Eagle Spring" are owners of the retail property). Tafoya also filed an Affidavit Claiming Lien on May 24, 2010. After receiving notice from Tafoya, JME hired and paid $5,611.23 to replacement contractors who completed the electrical work. JME further paid $267.33 for construction materials and $2,420 for plumbing labor and materials to complete the remodel.

Tafoya subsequently sued Eagle Spring, Benfante, and JME under various theories of liability. Tafoya obtained a default judgment against Benfante and moved for summary judgment against Eagle Spring, and JME. After moving for summary judgment, Tafoya settled with Eagle Spring for an undisclosed amount which left JME as the last remaining defendant. The district court granted Tafoya's summary judgment against JME and awarded Tafoya $10,635.24, pre-judgment interest of $1,211.54, and attorneys' fees of $17,000 through trial (with additional amounts in the event of an appeal).

In four issues, JME asserts the trial court erred by granting Tafoya's motion for summary judgment because (1) JME established a material fact existed regarding the retainage amount because completion of the project was not determined, (2) damages were improperly awarded for amounts under the fund-trapping statute, (3) pre-judgment interest was improperly awarded, and (4) a material fact issue remained regarding the reasonableness and necessity of Tafoya's attorneys' fees.

*Standard of Review*

We review a traditional summary judgment under well-established standards. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). A summary judgment is properly granted when the movant establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Nixon,* 690 S.W.2d at 548. All evidence favorable to the non-movant will be taken as true when deciding whether there is a disputed material fact issue precluding summary judgment. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* at 549. We review the summary judgment de novo to determine whether Tafoya's right to prevail is established as a matter of law. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Calpine Producer Servs., L.P. v. Wiser Oil Co.,* 169 S.W.3d 783, 786 (Tex.App.-Dallas 2005, no pet.).

Issues to be considered by the trial court in determining the motion for summary judgment must be presented in the motion or in an answer or other response to the motion. *See* Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 340–43 (Tex.1993). A summary judgment cannot be affirmed on grounds not expressly set out in the motion or response. *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993).

*Analysis*

In its first and second issues, JME complains the trial court erred in granting Tafoya's summary judgment. JME claims it was error for the trial court to grant Tafoya the full amount of the lien because a fact issue existed over the percentage of

completion of the project for the purpose of determining the proper amount of retainage.

■■■ The Property Code states:

(a) During the progress of work under an original contract for which a mechanic's lien may be claimed and for 30 days after the work is completed, the owner shall retain:

(1) 10 percent of the contract price of the work to the owner; or

(2) 10 percent of the value of the work, measured by the proportion that the work done bears to the work to be done, using the contract price or, if there is no contract price, using the reasonable value of the completed work.

(b) In this section, "owner" includes the owner's agent, trustee, or receiver.

Tex. Prop.Code Ann. § 53.101 (West 2007). The owner must retain ten percent of the project's cost regardless of how many individual construction contracts were awarded. *Hayek v. W. Steel Co.,* 478 S.W.2d 786, 792–93 (Tex.1972). Subcontractors rely on their statutory, derivative rights to collect funds due by the owner to the contractor or to impose a lien on the property. *Stolz v. Honeycutt,* 42 S.W.3d 305, 310 (Tex.App.-Houston [14th Dist.] 2001, no pet.).

■■■ The trial court awarded Tafoya $10,635.24 of which $2,336.68 (ten percent of the total contract price) was the retainage amount. The summary judgment evidence is clear and uncontroverted as to the original contract amount between Benfante and JME as $19,116.77 with a 15% discount.[1] It is also clear that modifications

were made to the original contract with additional charges for a final amount of $23,366.75. Behzad Sarhady, vice-president of JME, testified he paid Benfante "in full for all of the electrical goods, materials, and services supplied to the JME premises." However, the affidavits of the replacement contractors state they were hired by JME to complete the electrical work that Tafoya initiated. This evidence suggests the work contemplated by the original contract between JME and Benfante was not completed by its original terms and was therefore, either modified or terminated. The record does not provide any evidence of how the relationship between JME and Benfante ended. Subsection (a)(2) of the property code contemplates the need to measure the proper amount of retainage when a contract has not been completed. *See* Tex. Prop.Code Ann. § 53.101. We conclude an issue of material fact was raised by JME regarding the "portion of the work done" to determine the proper amount of retainage. JME's first issue is sustained.

■■■ In its second issue, JME claims the trial court improperly awarded amounts under the fund-trapping statute. Subchapter D of the property code provides for funds to be withheld by the owner following notice from a subcontractor of non payment. *See* Tex. Prop.Code Ann. §§ 53.081–.084 (West 2007), 53.085 (West Supp.2011). Under the trapping statute, when an owner receives notice that the contractor has failed to pay funds owed on work done on the property, the owner may withhold payments to the contractor in an amount sufficient to cover the claim for

---

1. JME also contends the retainage amount should have been reduced by a possible discount provided for in Benfante's contract. However, JME fails to provide any citation to legal authority for the proposition of lowering the retainage amount for this possible con-

tract discount. *See* Tex.R.App. P. 38.1(i). JME also fails to cite to the record showing evidence of the discount being utilized. *See* Tex. R.App. P. 38.1(i). Therefore, JME has waived any alleged error regarding the possible discount in the contract.

which he received notice. TEX. PROP.CODE ANN. § 53.081. The owner will be personally liable for any amounts paid to the contractor after receiving the proper notice under the statute if the subcontractor's lien has been secured and its claim reduced to judgment. *See id.* § 53.084. Section 53.083 permits a subcontractor to demand payment from an owner who was authorized to retain funds under subchapter D. When determining which payments for "work" on the property are subject to the trapping statute, "work must be defined in relation to a particular contract." *Page v. Structural Wood Components, Inc.,* 102 S.W.3d 720, 721 (2003).

▮ JME asserts the trial court improperly awarded Tafoya $267.33 for receipts paid to Lowe's, $2,420 to B & B Plumbing, and $5,611.23 to Haney Electric who was a replacement contractor. Tafoya claims the amounts were all paid "for or on behalf of George Benfante," were all paid after JME received Tafoya's notice on May 21, 2010, and are therefore, amounts for which JME became personally liable. Tafoya contends the amounts were all paid after JME received Tafoya's notice and now JME is liable to Tafoya for these amounts under the trapping statute.

The record reflects four Lowe's receipts attached as evidence to Tafoya's motion for summary judgment that do not total the sum awarded in the summary judgment. One of the Lowe's receipts is a credit and a question remains as to whether the credit applies to the other receipts. Also, while the B & B Plumbing invoice states "payment made for George Benfante ..." there is no evidence in the record of the Lowe's receipts having anything to do with the contract between JME and Benfante. The invoice for Haney Electric shows it was paid with two separate checks, both made after JME received their notice from Tafoya. How-

ever, the record is clear that Haney Electric was hired after Tafoya stopped working on the project. Tafoya's affidavit states he personally walked through the job site with Haney Electric employees and explained what work he had done as well as what work was left incomplete. The Texas Supreme Court has made it clear that "work must be defined in relation to a particular contract" thus, JME was not authorized to withhold funds from replacement contractors who had no relationship to Tafoya. *See Page v. Marton Roofing, Inc.,* 102 S.W.3d 733, 734–35 (Tex.2003) (finding owner not liable under fund trapping statute for any funds paid to replacement contractors). Consequently, we conclude the $5,611.21 should not have been included in the summary judgment award to Tafoya under the fund trapping statute. Because we find questions of material fact exist regarding the Lowe's receipts and that the amount paid to Haney Electric was improperly included in the award for summary judgment, we sustain JME's second issue.

Our disposition of JME's first and second issues resolve this appeal and we do not address its remaining issues. *See* TEX. R.APP. P. 47.1.

*Conclusion*

We reverse the trial court's summary judgment and this case is remanded for further proceedings consistent with this opinion.